## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CINDY J. AMES and DAVID R. AMES,

                      Plaintiffs,

      -against-

J.P. MORGAN CHASE BANK, N.A.,
NATIONWIDE TITLE CLEARING, INC.;
ERIKA LANCE; CYNTHIA A.
RILEY,LAQUINA WILSON DOATY,
PEARL BURCH, LASHONDA ANDERSON,
SHEQUITA KNOX, and ANGELA RUTH
PAYNE, AND ALDRIDGE CONNORS,
LLPAND JOHN DOES 1-5

                     Defendants.

Civil Action
Case No.

JURY TRIAL DEMANDED

## COMPLAINT

     Plaintiffs Cindy J. Ames and David R. Ames (the "Ameses"), by and through their

undersigned attorneys, for their complaint against Defendants J.P. Morgan Chase Bank, N.A.

("Chase"); National Title Clearing, Inc. ("NTC"); Erika Lance ("Lance"); Cynthia A. Riley

("Riley"); LaQuina Wilson Doaty ("Doaty"); Pearl Burch ("Burch"); LaShonda Anderson

("Anderson"); Shequita Knox("Knox");Angela Ruth Payne ("Payne"); Aldridge Connors, LLP

(AC); and, John Does 1-5(collectively "the Defendants") allege as follows:

### I.   NATURE OF THE ACTION

    1.    Through this action, brought pursuant to 28 U.S.C. § 2201*et seq.,* the Ames's

hereby seek a declaratory judgment to determine: i) whether the purported transfer of the Ames's

promissory note dated March 30, 2007, made payable to Washington Mutual Bank, F.A.

("Note"), from the Federal Deposit Insurance Corporation ("FDIC") as Receiver of Washington Mutual Bank, N.A. ("WaMu NA") f/k/a Washington Mutual Bank, F.A. ("WaMu FA") to Chase, in fact occurred on or about September 25, 2008; ii) if the Court finds said purported transfer did in fact occur, whether or not that transfer from the FDIC to Chase was by operation of law under 12 U.S.C. § 1821(d)(2)(G)(i)(II); iii) whether the Assignment of Security Deed dated August 22, 2012, filed and recorded in the Fulton County, Georgia Superior Court, in Book 51608 at Page 550,is a void assignment as a matter of law as a result of the Limited Power of Attorney ("LPOA") appointing Defendant Chase as the Attorney in Fact for the FDIC being revoked almost two years prior, on September 10, 2010; and, iv) whether the indorsement on the Note by Defendant Riley is a valid indorsement, making Chase a holder by negotiation of the Note under the Georgia Uniform Commercial Code, O.C.G.A. §§ 11-3-201*et seq*., 11-3-203 *et seq*.,11-3-204*et seq*.,. § 11-3-301*et seq*., and 11-3-308 *et seq*., (2012).

2.    If the Court finds that the transfer could not and did not occur as a matter of law, and that the Assignment is void as a matter of law, Plaintiffs hereby bring an action for: i) attempted wrongful foreclosure; ii) civil conspiracy to slander the Ames's title to their property; iii)  mortgage fraud in violation of O.C.G.A. §  16-8-101 *et seq*.; iv) breach of contract; and, iv) violations of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq*.

## RELEVANT PARTIES

3.    Plaintiffs Cindy and David Ames are, and at all relevant times mentioned herein were, the owners of real property in Georgia located at 4055 Old Southwick Pass, Alpharetta, Georgia 30022 (the "Property").

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

3

4.    Upon information and belief, Defendant Chase is, and at all relevant times mentioned herein was, a National Banking Association organized under the laws of the United States with its principal place of business in Columbus, Ohio. Chase is the successor in interest to Chase Manhattan Bank and Bank One, N.A. with operations located throughout the United States, including but not limited to, the state of Florida.  Chase may be served with process in Florida through its registered agent, CT Corporation, 1200 South Pine Island Road, Plantation, Florida 33324.

5.    Upon information and belief, Defendant NTC is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Palm Harbor, Florida. NTC may be served with process in Florida at its corporate headquarters, 2100 U.S. 19 Alt, Palm Harbor, FL 34683.

6.    Upon information and belief, Defendant Lance is, and at all relevant times mentioned herein was, an employee of NTC, and a resident of Florida.

7.    Upon information and belief, Defendant Riley is, and at all relevant times mentioned herein was, an employee of WaMu NA f/k/a WaMu FA or Chase, and a resident of Florida.

8.    Upon information and belief, Defendant Doaty is, and at all relevant times mentioned herein was, an employee of Chase, and a resident of Louisiana.

9.    Upon information and belief, Defendant Burch is, and at all relevant times mentioned herein was, an employee of Chase, and a resident of Louisiana.

10.    Upon information and belief, Defendant Anderson is, and at all relevant times mentioned herein was, an employee of Chase, and a resident of Louisiana.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

4

11.     Upon information and belief, Defendant Knox is, and at all relevant times mentioned herein was, an employee of Chase, and a resident of Louisiana.

13.     Upon information and belief, Defendant Payne is, and at all relevant times mentioned herein was, an employee of Chase and a resident of Louisiana.

14.     Defendant Aldridge Connors, LLP, ("AC") is a Georgia limited liability partnership whose law firm represents Chase in the debt collection activities directed at Plaintiffs.

15.     John Does 1-5 ("DOE") are persons, agents, or lawyers operating as debt collectors and may be assisting with the debt collection against the Plaintiffs.


### III.     JURISDICTION AND VENUE

16.     This action arises under the Federal Declaratory Judgments Act, 28 U.S.C §§ 2201 and 2202.

17.     This Court has jurisdiction over this action under 28 USC §§ 1331and 1332(a)(2). This Court has supplemental jurisdiction under 28 USC § 1367(a) over all other related claims herein as they form part of the same case or controversy.

18.     Venue is proper under 28 USC § 1391(c)(2).

19.     Plaintiffs are residents of Georgia.

20.     Upon information and belief, Defendant Chase is duly registered company with the Florida Secretary of State's office to transact business in the state of Florida, with a registered agent for service of process in the state of Florida.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

5

21. Upon information and belief, Chase is subject to the Court's specific and general personal jurisdiction, pursuant to due process and/or the Florida long arm statute, due to at least its substantial business in this District.

22. Further, upon information and belief, Chase is subject to the Court's general jurisdiction, as a result of its own actions, or the actions of its agents or licensees, of regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to persons or entities in the state of Florida and specifically within this District.

23. Upon information and belief, Defendant NTC is duly registered corporation with the Florida Secretary of State's office to transact business in the state of Florida as a domestic corporation.

24. Further, upon information and belief, Defendant NTC is subject to the Court's specific and general personal jurisdiction, pursuant to due process and/or the Florida Constitution, as a result of being headquartered in this District.

25. Upon information and belief, Defendant Riley is a resident of Florida subject to the Court's specific and general personal jurisdiction, pursuant to due process and/or the Florida Constitution.

26. Upon information and belief, Defendant Lance is a resident of Florida subject to the Court's specific and general personal jurisdiction, pursuant to due process and/or the Florida Constitution.

27. Upon information and belief, Defendants Doaty, Burch, Anderson, Knox and Payne are residents of Louisiana subject to the Court's specific and general personal jurisdiction,

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and in In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

6

pursuant to due process and/or the Florida long arm statute, due to at least their substantial business with Defendant NTC in this District.

28.     Further, upon information and belief, Doaty, Burch, Anderson, Knox and Payne are subject to the Court's general jurisdiction, as a result of their actions of regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to persons or entities in the state of Florida and specifically within this District.

29.     Upon information and belief Defendant Aldridge Connors is a resident of Georgia subject to the Court's specific and general personal jurisdiction, pursuant to due process and/or the Florida long arm statute, due to at least their substantial business with Defendant JPMorgan Chase in this District.

30.     Further, upon information and belief, Defendant Aldridge Connors is subject to the Court's general jurisdiction, as a result of regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to persons or entities in the state of Florida and specifically within this District.

## IV.   **FACTUAL BACKGROUND**

31. The preceding paragraphs are incorporated by reference as if stated herein verbatim.

32.     On March 30, 2007, Plaintiff David Ames took a loan evidenced by a promissory note made payable to WaMu FA, an entity no longer in business.  That same day, Plaintiffs Cindy Ames and David Ames executed a Security Deed securing the debt of the Note with the Property.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

33.    Plaintiff Cindy Ames did not sign the Note and is not liable for the debt evidenced by the Note despite the fact that she is listed as a "Borrower" on the Security Deed.

34.    Upon information and belief, on September 25, 2008, the FDIC was appointed Receiver for WaMu NA f/k/a WaMu FA, and Chase purports the FDIC acquired the Ameses Security Deed by operation of law under 12 U.S.C. § 1821(d)(2)(A).

35.    Upon information and belief, the FDIC is purported to have sold *certain* WaMu NA assets and liabilities to Chase pursuant to a *voluntary* Purchase and Assumption Agreement dated September 25, 2008, attached hereto as Exhibit A ("Purchase Agreement").

36.    Upon information and belief, the day following the effective date of the Purchase Agreement, Washington Mutual Inc. ("WMI"), the parent holding company for WaMu NA, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.

37.    Thereafter, multiple lawsuits contesting the transfer of ownership of over $20 billion in assets as a result of the voluntary Purchase Agreement were brought against WMI, Chase and the FDIC, in both its corporate capacity and its capacity as Receiver.[1]

38.    Upon information and belief, the Note has not been negotiated[2] to Defendant Chase as a matter of law and Chase has not lawfully perfected any lien interest it purports to claim in the Property.

---

[1] See, *Kim v. JP Morgan Chase Bank, N.A.*, ___ Mich ___; ___ NW2d ___; (Docket No. 144690, filed December 21, 2012), the Michigan Supreme Court held that "[w]hen a subsequent mortgagee acquires an interest in a mortgage through a voluntary purchase agreement with the FDIC, the mortgage has not been acquired by operation of law ...." .
[2] Under Georgia's Uniform Commercial Code, a "holder" of a negotiable instrument is one who has received the instrument through a "negotiation." O.C.G.A. § 11-3-201. "Negotiation" of an

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

39.     Upon information and belief, Chase is neither a secured creditor nor a holder in due course of the Ames's Note and thus lacks the authority to enforce the alleged defaulted debt evidenced thereby as a matter of law.

40.     Under existing law in Georgia, when paying the secured indebtedness, the burden rests on the Plaintiff David Ames to determine whether the person to whom he pays is the holder of the instrument or his authorized agent[3].

41.     Upon information and belief, in order for Chase to acquire ownership of the Note from the FDIC, the debt evidenced by the Note had to be recognized on relevant accounting ledgers of WaMu NA pursuant to Financial Accounting Standards Board Statement No. 140 ("FAS 140") on the effective date of the Purchase Agreement.

42.     It is undisputed that Defendant Chase never received a list of assets or individual promissory notes *from FDIC pursuant to the Purchase Agreement.*

43.     Plaintiffs and their agents sought evidence and documents prior to the filing of this Complaint that would prove and show:

    a.   Defendant Chase is in fact the secured creditor, owner and holder in due course as to Plaintiffs' loan;

    b.   that Plaintiffs' original wet-ink promissory note was entered in the accounting books and relevant ledgers of WaMuNA on the effective date of the Purchase Agreement;

---

instrument that is payable to an identified person "requires transfer of possession of the instrument and its indorsement by the holder." O.C.G.A. § 11-3-201(b).

[3]"Where money is due on a written evidence of debt, payment to an agent of the creditor who fails to produce the obligation shall be at the risk of the debtor. Nonproduction of the security shall rebut the implication of authority arising from the agent's employment, and it must be otherwise established." O.C.G.A. § 10-6-57.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

    c.   that in fact, Chase acquired Plaintiff's loan from the FDIC via the Purchase Agreement; and,

    d.   that Chase could lawfully modify the terms and conditions of the Note as well as cancel the debt if paid, to prevent double-liability and satisfy and release the deed to secure debt providing Plaintiffs clear title to the Property.

44.    Plaintiffs' have evidence that Defendant Chase's loan servicing system and that of WaMu NA, which, upon information and belief, were/are a product owned by a third party vendor.

45.    In conjunction with this knowledge, Plaintiffs requested Chase to provide very specific information prior to the filing of this Complaint.

46.    Specifically, Plaintiffs requested Chase to provide electronically stored information ("ESI") from its MSP servicing system of record related to the "P190" code screen to verify the existing servicing records Chase necessarily maintains that identifies it as a secured creditor with standing to initiate a "non-judicial foreclosure" action against the Property pursuant to Georgia law.

47.    Chase refused to provide the requisite MSP servicing records at the time of Plaintiffs' initial inquiry, Chase did not possess the requisite business records to pursue a non-judicial foreclosure against the Property because the Note was not and had not been negotiated to it and Chase was/is not an owner, holder in due course of the Note as a matter of law, thereby lacking the authority to enforce the alleged default under O.C.G.A. § 11-3-301.

48.    In addition to servicing system of record entries, Plaintiffs' have sought journal entries in the financial, accounting, and general ledger systems of records from WaMu as of the date of the FDIC takeover and of Chase as of the dates of purported notices of default, acceleration, and notice/advertisement of sale.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

10

49.     Chase has refused to provide any such proof and entries that the note was recognized on the "accounting records" as defined in Article I of the Purchase Agreement. Per Article XI of the Purchase Agreement, Chase was charged with the preservation of WaMu's financial and accounting records.

50.     Plaintiffs also requested a certified copy of the original wet-ink Note as it existed on that very date in Chase's collateral files and/or vault, believed to be located in Monroe, LA. See Exhibit B, November 23, 2011 letter from David Ames to Chase.

51.     Chase did not send a certified copy of the Note; rather, Chase sent a copy of the entire origination file EXCEPT for a copy of the Note executed by David Ames to Plaintiffs via U.S. Mail. See Exhibit C, December 6, 2011 response from Chase.

52.     Notably, Exhibit C contains indicia that the Ames loan was initially denied as having insufficient loan to value. The loan was originated through WaMu's wholesale Loan Fulfillment Center in Lake Success, NY.   See Exhibit C-1. The Collateral Valuation Report also indicates that "the loan amount exceeds the maximum threshold". See Exhibit C-2. Inexplicably the re-finance was approved based upon an appraisal performed by EAppraiseIT[4].

---

[4] On November 1, 2007, the Attorney General of the State of New York filed a lawsuit against First American Corporation and First American eAppraiseIT. *The People of the State of New York by Andrew Cuomo v. First American Corporation and First American eAppraiseIT*, No. 07-406796 (N.Y. Sup. Ct. Filed Nov. 1, 2007). According to the Attorney General's Complaint, eAppraiseIT is a First American subsidiary that provides residential real estate appraisal services to various lenders, including the Bank. The Attorney General asserts that, contrary to various state and federal requirements and the Uniform Standards of Professional Appraisal Practice, the Bank conspired with eAppraiseIT in various ways to falsely increase the valuations done by appraisers eAppraiseIT retained to perform appraisals on Bank loans. First American Corporation and First American eAppraiseIT are not affiliates of the Company, and neither the Company nor the Bank is a defendant in the case. *See*, Washington Mutual, Inc., 10-Q for Quarterly Ending June 30, 2008.

Mack Law Firm Chartered
2022 Placida Road �telescope Englewood Florida 34224-5204 �telescope (941) 475 7966 T �telescope (941) 475-0729 F �telescope
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

53.     On September 18, 2012 in response to another request from Plaintiff David Ames. This response actually DID include a copy of the promissory note. The copy of the Note received by Plaintiffs from Chase via facsimile was made payable to WaMu FA and was not indorsed pursuant to O.C.G.A. § 11-3-204 (a) – neither specifically nor in blank -- nor were there any alonges attached to the copy of the Note faxed by Chase. Exhibit D is the September 18, 2012 response; D-1 is the Note sent with the response.

54.     Under O.C.G.A. § 11-3-203(c), as a result of the Note being made payable to WaMu FA with no indorsement on the Note, the Note had not been negotiated to Chase and Chase was not entitled to enforce the Note as a matter of law.

55.     Under the Georgia Uniform Commercial Code ("UCC"), the Note, lacking any indorsement, was never negotiated to Chase, and Chase lacked the authority to enforce the debt.

56.     Therefore, upon information and belief, Chase lacked standing to initiate a non-judicial foreclosure action against the Property under Georgia law on the dates it noticed the non-judicial foreclosure and sale of the Plaintiff's residence.

57.     On October 2, 2012, based on the copy of the unendorsed Note received by Plaintiffs from Chase, Plaintiffs, pursuant to their duty to determine who was the rightful holder and owner of their debt, demanded further proof that Chase was a secured creditor under Georgia law and additionally demanded that Chase "prove up ownership" with the authority to enforce

http://www.sec.gov/Archives/edgar/data/933136/000104746908009146/a2187197z10-q.htm#page_es40701_1_88

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

the wet ink Note. See Exhibit E,  October 2, 2012 letter to Chase from Plaintiff's co-counsel Dale Calomeni.

58.    Chase replied by letter dated November 7, 2012, providing a copy of only the Note, Security Deed and Assignment, stating that Chase was the holder of both the Note and the Security Deed and that Chase owned the "loan" refusing to provide all of the demanded information to Plaintiffs. See Exhibit F, November 7, 2012 letter with enclosures from Chase through its attorneys at Aldridge Connors.

59.    The copy of the Note sent in response to the Ameses second inquiry differed from the Note sent in response to the Ameses first inquiry – the second copy of the Note now had an undated indorsement in blank from WaMu FA that contained, upon information and belief, the stamped signature of Defendant Riley.

60.    Upon information and belief, the indorsement from Riley is not a valid indorsement and was not signed by Riley and that under O.C.G.A. § 11-3-308(a), Riley was not authorized to indorse the Note and did not indorse the Note on behalf of WaMu FA as of the dates between the faxed copy of the Note attached hereto as Exhibit C and D-1 sent on December 6, 2011 and the copy of the Note sent to Plaintiffs' co-counsel on November 7, 2012 attached hereto in Exhibit F.

61.    Plaintiffs, upon information and belief, allege that the indorsement on the Note was knowingly and intentionally placed on the Note by Chase without authority after the Ameses' initial inquiry on November 23, 2011, Exhibit B, and before Chase's November 7, 2012, Exhibit F,  response to the Ameses' second inquiry, and that the indorsement is a forged indorsement intentionally and knowingly placed on the Note in furtherance of a conspiracy among the Defendants to slander the Ameses title to their Property.

Mack Law Firm Chartered
2022 Placida Road ✕ Englewood Florida 34224-5204 ✕ (941) 475 7966 T ✕ (941) 475-0729 F ✕
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

13

62.     To date, in other cases, Chase has failed and/or refused to provide any corporate resolution authorizing Riley to endorse promissory notes[5].

63.     Upon information and belief, pursuant to O.C.G.A. 24-4-23, Chase's silence and failure to respond to the Ameses' request in its entirety – specifically Chase's refusal to provide accounting and ledger information as to recognition and derecognition of the Note being on Chase's books, including the ESI request for the P190 screen in its MSP mortgage servicing system of record, after a reasonable time, amounts to an admission of the Ameses' claim that Chase was not a secured creditor with authority to enforce the debt evidenced by the Note.

64.     Upon information and belief, Chase has, by its conduct, admitted it did not and does not possess the authority to enforce the debt evidenced by the Note.

65.     Despite the fact that the Note had not been negotiated to Chase as a matter of law, and that Chase was not a secured creditor as a matter of law, in addition to the fact that Chase never listed the specific defaults nor accelerated the Note with the right to cure pursuant to Georgia law O.C.G.A. 44-14-162.2 and ¶22 of the Security Deed, Chase and the Defendants acted together with knowledge and intent in a conspiracy to injure the Ameses, initiating a non-judicial foreclosure action against the Property on September 18 and November 23, 2012, see Exhibits G and H.

66.     Plaintiffs deny that the Note is in default and, upon information and belief, claim that the Note, or a portion thereof, has been paid by a co-obligor, surety or endorser pursuant to ¶ 9 of the Note.

---

[5] Defendants Chase and Riley lack evidence of corporate resolutions or other documents evidencing Riley's alleged authority to endorse promissory notes for WaMu FA.

Mack Law Firm Chartered
2022 Placida Road ✪ Englewood Florida 34224-5204 ✪ (941) 475 7966 T ✪ (941) 475-0729 F ✪
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

14

67.     Defendants are knowingly and intentionally collaborating and conspiring to non-judicially foreclose on the Property in open and conspicuous contravention of Georgia law O.C.G.A. 44-14-162.2, thereby slandering the Ameses' title to the Property, resulting in special damages and concomitant monetary damages as a result of their actions through the intentional publication of untrue and derogatory information concerning the Ameses' financial condition by falsely declaring to the public that the Note was in default.

68.     Upon information and belief, Defendant Chase, by its actions against the Ameses has breached the consented to Federally Mandated Regulatory "COMPLIANCE PROGRAM" under the Department of the US Treasury Comptroller of the Currency Consent Order, #AA-EC-11-15, which provides:

a.   Within sixty (60) days of this Order, the [Chase] shall submit to the Deputy Comptroller and the Examiner-in-Charge an acceptable compliance program to ensure that the mortgage servicing and foreclosure operations, including Loss Mitigation and loan modification, comply with all applicable Legal Requirements, OCC supervisory guidance, and the requirements of this Order and are conducted in a safe and sound manner ("Compliance Program"). The Compliance Program shall be implemented within one hundred twenty (120) days of this Order. Any corrective action timeframe in the Compliance Program that is in excess of one hundred twenty (120) days must be approved by the Examiner-in-Charge. The Compliance Program shall include, at a minimum:

   i.   appropriate written policies and procedures to conduct, oversee, and monitor mortgage servicing, Loss Mitigation, and foreclosure operations;
   ii.  *processes* to ensure that all *factual assertions* made in *pleadings, declarations, affidavits,* or other sworn statements filed by or on behalf of the Bank are *accurate, complete, and reliable*; and that *affidavits and declarations are based on personal knowledge or a review of the Bank's books and records* when the affidavit or declaration so states;
   iii. processes to ensure that affidavits filed in foreclosure proceedings are executed and notarized in accordance with state legal requirements and applicable guidelines, including jurat requirements;

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

iv. *processes to review and approve standardized affidavits* and declarations for each jurisdiction in which the Bank files foreclosure actions to ensure compliance with applicable laws, rules and court procedures;

v. *processes to ensure that the Bank has properly documented ownership of the promissory note and mortgage* (or deed of trust) under applicable state law, *or is otherwise a proper party to the action (as a result of agency or other similar status) <u>at all stages of foreclosure</u>* and bankruptcy litigation, <u>*including appropriate transfer and delivery of endorsed notes and assigned mortgages or deeds of trust at the formation of a residential mortgage-backed security, and lawful and verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership;*</u>

vi. processes to ensure that a clear and auditable trail exists for all factual information contained in each affidavit or declaration, in support of each of the charges that are listed, including whether the amount is chargeable to the borrower and/or claimable by the investor;

vii. processes to ensure that foreclosure sales (including the calculation of the default period, the amounts due, and compliance with notice requirements) and post-sale confirmations are in accordance with the terms of the mortgage loan and applicable state and federal law requirements;

viii. processes to ensure that all fees, expenses, and other charges imposed on the borrower are assessed in accordance with the terms of the underlying mortgage note, mortgage, or other customer authorization with respect to the imposition of fees, charges, and expenses, and in compliance with all applicable Legal Requirements and OCC supervisory guidance;

ix. processes to ensure that the Bank has the ability to locate and secure all documents, including the original promissory notes if required, necessary to perform mortgage servicing, foreclosure and Loss Mitigation, or loan modification functions;

x. ongoing testing for compliance with applicable Legal Requirements and OCC supervisory guidance that is completed by qualified persons with requisite knowledge and ability (which may include internal audit) who are independent of the Bank's business lines;

xi. measures to ensure that policies, procedures, and processes are updated on an ongoing basis as necessary to incorporate any changes in applicable Legal Requirements and OCC supervisory guidance;

xii. processes to ensure the qualifications of current management and supervisory personnel responsible for mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation and loan modification, are appropriate and a

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

determination of whether any staffing changes or additions are needed;

xiii.   processes to ensure that staffing levels devoted to mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation, and loan modification, are adequate to meet current and expected workload demands;

xiv.   processes to ensure that workloads of mortgage servicing, foreclosure and Loss Mitigation, and loan modification personnel, including single point of contact personnel as hereinafter defined, are reviewed and managed. Such processes, at a minimum, shall assess whether the workload levels are appropriate to ensure compliance with the requirements of Article IX of this Order, and necessary adjustments to workloads shall promptly follow the completion of the reviews. An initial review shall be completed within ninety (90) days of this Order, and subsequent reviews shall be conducted semi-annually;

xv.   processes to ensure that the risk management, quality control, audit, and compliance programs have the requisite authority and status within the organization so that appropriate reviews of the Bank's mortgage servicing, Loss Mitigation, and foreclosure activities and operations may occur and deficiencies are identified and promptly remedied;

xvi.   appropriate training programs for personnel involved in mortgage servicing and foreclosure processes and operations, including collections, Loss Mitigation, and loan modification, to ensure compliance with applicable Legal Requirements and supervisory guidance; and

xvii.   appropriate procedures for customers in bankruptcy, including a prohibition on collection of fees in violation of bankruptcy's automatic stay (11 U.S.C. § 362), the discharge injunction (11 U.S.C. § 524), or any applicable court order.

69.   Defendants knowingly and intentionally collaborated and conspired against the

Ameses to injure and defraud them by placing a knowingly and intentionally untrue

advertisement of foreclosure in the Fulton County Daily Report in September and December,

2012, Exhibits G and H, that contained derogatory information concerning the Ameses' financial

condition and are unlawfully attempting to take the Property in violation of O.C.G.A. 16-8-101,

which provides statutory definitions for Mortgage Fraud:

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1,
2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

a. "Mortgage lending process" means the process through which a person seeks or obtains a residential mortgage loan including, but not limited to, solicitation, application, or origination, negotiation of terms, third-party provider services, underwriting, signing and closing, and funding of the loan. Such term shall also include the execution of deeds under power of sale that are required to be recorded pursuant to Code Section 44-14-160 and the execution of assignments that are required to be recorded pursuant to subsection (b) of Code Section 44-14-162. Documents involved in the mortgage lending process include, but shall not be limited to, uniform residential loan applications or other loan applications; appraisal reports; HUD-1 settlement statements; supporting personal documentation for loan applications such as W-2 forms, verifications of income and employment, bank statements, tax returns, and payroll stubs; and any required disclosures.

70.    Defendants knowingly and intentionally collaborated and conspired against the Ameses to injure and defraud them by unlawfully attempting to take the Property in violation of O.C.G.A. 16-8-102 which states: in pertinent part: "[a] person commits the offense of residential mortgage fraud when, with the intent to defraud, such person:

a. Knowingly makes any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
b. Knowingly uses or facilitates the use of any deliberate misstatement, misrepresentation, or omission, knowing the same to contain a misstatement, misrepresentation, or omission, during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process." (Emphasis added)."

## V.    FACTS SPECIFIC TO THE PROPERTY

71.    The preceding paragraphs are incorporated by reference as if stated herein verbatim.

72.    On February 15, 2000, Plaintiffs, Joint Tenants with Rights of Survivorship, were the Grantees of a Warranty Deed attached hereto as Exhibit I, for their primary residence, located at 4055 Old Southwick Pass, Alpharetta, Georgia 30022.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

73.    The Plaintiffs' Warranty Deed filed and recorded into the Official Fulton County Real Estate Records on March 3, 2000, at Deed Book 28634, Page 305, predates all claims to the Property by Chase, conveying the Property to the Ameses in fee simple.

74.    Real Estate Transfer Taxes in the amount of Three Thousand Five Hundred Twelve Dollars and Fifty Cents, ($3,512.50) were paid by Plaintiffs at recording.

75.    The subject property is more thoroughly described as:

> ALL THAT PARCEL OF LAND LYING AND BEING IN LAND LOTS 63, 64, 69 AND 70 OF THE 1ST DISTRICT, 1ST SECTION , OF FULTON COUNTY, GEORGIA, BEING KNOWN AS LOT 24, POD X, OF THE COUNTRY CLUB OF THE SOUTH SUBDIVISION, ACCORDING TO A PLAT OF SURVEY RECORDED IN PLAT BOOK 166, PAGE 113, FULTON COUNTY, GEORGIA RECORDS.

76.    On March 30, 2007, Plaintiffs refinanced their home and Plaintiff David Ames executed the subject Note in favor of WaMu FA. The Note provides for an initial monthly payment of $22,765.63 due on the first of each month for the first ten years after which the fixed rate becomes adjustable. Exhibit D-1, ¶3(B). The Note further provides that payments received after the fifteenth day of the month a late fee will be accessed. The late fee is calculated as follows: "[t]*he amount of the charge will be 5.00% of my overdue payment of interest* during the period when my payment is interest only and of principal and interest thereafter. *I will pay this late charge promptly but only once on each late paymen*t." Therefore the late fee on a late payment of $22,765.63 is 5% or $1,138.28. Exhibit D-1, ¶7(A).

77.    Plaintiffs Cindy Ames and David Ames thereafter executed a Security Deed listing the Property as security for the Note, which was recorded on April 06, 2007, in Deed Book 44784, at Page 545, Fulton County Georgia Records. A copy of which is attached hereto as Exhibit F-2.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

19

78.     On December 20, 2010 Chase Home Finance (CHF) sent an Acceleration

Warning (Notice of Intent to Foreclose) to David Ames. The letter stated that the debt was in

default for "failure to pay the required monthly installments commencing with the payment due

10/01/2010". The letter further stated that the Total Monthly Payments due equaled $68296.89

and that Late Fees were owed in the amount of $6829.68.  The $68296.89 is the sum of three late

payments ($68296.89/3= $22765.63). The Late Fee amount of $6829.68 is 10% * $68296.89.

Exhibit J is a copy of the December 20, 2010 letter.

79.     At the end of 2010 Defendant Chase began to escrow real estate taxes and

insurance causing a negative  "escrow balance" of ($52,662.34) as of 12/28/2010. The monthly

escrow payment equals $1,495.45rendering the new monthly payment $24,261.08. Exhibit K.

80.     On May 31, 2011Defendant Chase sent another Acceleration Warning (Notice of

Intent to Foreclose) to David Ames. This letter stated that the default was due to the "failure to

pay the required monthly installments commencing with the payment due 04/01/2011." It further

stated that the Total Monthly Payments overdue equaled $45531.26 and that Late Fees were

owed in the amount of $9844.52. The $45531.26 is the sum of two late payments

($45531.26/2=$22765.63). The Late Fee amount of $9844.52 is unrelated to 5% of two months

of late payments pursuant to the formula in ¶7(A) of the Note  ($9844.52/$1,138.28= 8.649).

Exhibit L is the May 31, 2011 letter from Chase.

81.     On March 30, 2012 Defendant Chase sent another Acceleration Warning (Notice

of Intent to Foreclose) to David Ames. This letter stated that the default was due to the failure "to

pay the required monthly installments commencing with the payment due February 1, 2012." It

further stated that the Total Monthly Payments overdue equaled $48,522.33 and that Late Fees

were owed in the amount of $10,759.36. The $48,522.33 equals two missed payments including

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1,
2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

20

escrow payments ($48,522.33/2= $24,261.16[6]). The Late Fee amount is unrelated to the Note

formula even when the formula is applied to the new payment amount[7] ($24,261.16 * 5%=

$1,213.08 * 2 = $2,426.16). Exhibit M is the March 30, 2012 letter from Chase.

82.   On May 2, 2012 Defendant Chase sent another Acceleration Warning (Notice of

Intent to Foreclose) to David Ames. This letter stated that the default was due to the failure "to

pay the required monthly installments commencing with the payment due March 1, 2012." It

further stated that the Total Monthly Payments overdue equaled $72,783.24 and that Late Fees

were owed in the amount of $11,897.64. The $72,783.24 equals three missed payments including

escrow payments ($72,783.24/3= $24,261.08). The Late Fee amount is again unrelated to the

Note formula ($72,783.24 * 5% = $3,639.16). Exhibit N is the May 2, 2012 letter from Chase.

83.   Upon information and belief, on August 22, 2012, Defendants knowingly and

intentionally executed an assignment of the Security Deed ("Assignment") purporting to assign

the Security Deed only – not the Note – from the FDIC to Chase.

84.   The Assignment, attached hereto as Exhibit F-3, was allegedly recorded

September 4, 2012, in Book 51608, Page 550, in the Fulton County Georgia Records, alleging

that the FDIC, acting as receiver of WaMu, NA f/k/a WaMu FA, assigned the Security Deed to

Chase.

85.   Upon information and belief, the Assignment was prepared by Defendants NTC

and Lance in the state of Florida.

---

[6] Plaintiffs note that Chase added an extra $.08 to each alleged late payment.
[7] Plaintiffs do not concede that ¶7(A) of the Note provides for the imposition of late fees on the escrow amount but merely provided the formula to illustrate their concerns.

Mack Law Firm Chartered
2022 Placida Road ✕ Englewood Florida 34224-5204 ✕ (941) 475 7966 T ✕ (941) 475-0729 F ✕
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

86.     Notably, the Assignment purports it is "intended to further memorialize the transfer that occurred *by operation of law* on September 25, 2008 as authorized by Section 11(d)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821 (d)(2)(G)(i)(II)[]" (*emphasis added*), and states it was executed by Chase as Attorney-in Fact for the FDIC.

87.     Upon information and belief, the assignment is void as a matter of law.

88.     Upon information and belief, the execution and recording of the purported Assignment is *ultra vires*. The Limited Power of Attorney ("LPOA"), attached hereto as Exhibit O, appointing Chase as the Attorney-in-Fact for the FDIC, was recorded in Fulton County Georgia on December 18, 2008, in Book 47435 at Pages 673-681.

89.     The LPOA explicitly states that Chase's authority to act as Attorney-in-Fact for the FDIC is effective "from and after September 25, 2008, and shall continue in full force and effect through September 25, 2010, unless otherwise terminated by an official of the FDIC authorized to do so by the FDIC Board of Directors ("Revocation").*At such time this Limited Power of Attorney will be automatically revoked.*" (*Emphasis added*).

90.     The LPOA from the FDIC to Chase, by its own terms, had been revoked almost two (2) years prior to August 22, 2012 – the date the purported Assignment was executed, and was and is of no legal effect.

91.     Moreover, the LPOA must be strictly construed.  At page 2 of the LPOA, the FDIC explicitly states "[t]he form that the Attorney-in-Fact *shall* use for the signature block is as follows (*emphasis added*):

FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for Washington
Mutual Bank, formerly known as Washington
Mutual Bank, FA

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

By: JPMorgan Chase Bank, National Association
Its Attorney-in-Fact

By: _____
Name: _____
Title: _____

However, the Assignment is devoid of any such required signature block.

92.     The Limited Power of Attorney also prescribes the form of signature that "shall [be] use[d]" to indorse promissory notes and specifies other quoted language that must be included in "[a]ll ordinary or necessary endorsements, acknowledgements, affidavits, and supporting documents as may be necessary or appropriate to evidence the sale, transfer, conveyance and/or assignment of any interest in real estate...from the Receiver to JPMorgan Chase or an affiliate of Chase" (Exhibit O, ¶1). Therefore it is clear that Chase was not intended to rely solely on the Assignment but was also to execute indorsements of the promissory notes and assignments of other loan documents.

93.     The fact that the LPOA was automatically revoked on September 25, 2010, by its own terms, and the fact that the Assignment was purportedly executed on August 22, 2012, sans the required signature block, renders the execution and recording of the Assignment void of any authority to transfer any interest in the Property as a matter of law.

94.     Even if the Assignment was intended to convey the Security Deed, the Assignment is defective. Under Georgia law, transfers of security deeds must be attested by two witnesses, one of whom must be an officer authorized by law to attest registrable instruments. O.C.G.A. §§ 44-14-64(a), 44-14-61, 44-14-33. And under Georgia's equal dignity rule, where an act to be performed by an agent must be executed with certain formalities, the creation of the

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

agency must be executed with the same formalities. O.C.G.A. § 10-6-2; *Continental Insurance Company v. Gazaway*, 216 Ga. App. 125, 126-27 (1994).

95. The Limited Power of Attorney states that it was signed by an FDIC official in Dallas, Texas, on October 30, 2008. The authority of the FDIC official to sign on the FDIC's behalf was attested by the signature of an FDIC attorney in the District of Columbia on November 6, 2008. The signature of the FDIC official was acknowledged by a notary public in Texas on October 30, 2008, but there is nothing to indicate where the two unofficial witnesses, Catherine L. Hammond and Shirley L. Walker, were and whose signature they claim to have witnessed. One of the two signatures on the Limited Power of Attorney lacks proper attestation because the two unofficial witnesses were, presumably, not in both Texas and the District of Columbia. Therefore the Limited Power of Attorney is not properly attested, the equal dignity rule is not satisfied, and renders it and the Assignment void for another reason.

96. Upon information and belief, the Assignment that was prepared by Defendant NTC and Defendant Lance in Florida was executed by Defendants Doaty and Burch, acting as Vice Presidents for Chase, in Ouachita Parish, Monroe, Louisiana on August 22, 2012.

97. Plaintiffs allege that Ms. LaQuina Wilson Doaty was not, and could not be, a vice president of Defendant Chase at all relevant time periods. The factual support for this allegation is found in the attached: Assignment of Mortgage/Deed of Trust recorded in the Desoto County, MS official records on April 9, 2012 at book 3424, page 196 which is allegedly signed by Doaty as Vice President of Mortgage Electronic Registration Systems, Inc. as Nominee for BNC Mortgage Ins., on March 26, 2012 in Pinellas County, FL; Assignment of Mortgage/Deed of Trust recorded in the Desoto County, MS official records on April 9, 2012 at book 3424, page 197 which is allegedly signed by Doaty as Vice President of Mortgage Electronic Registration

Mack Law Firm Chartered
2022 Placida Road ✪ Englewood Florida 34224-5204 ✪ (941) 475 7966 T ✪ (941) 475-0729 F ✪
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

Systems, Inc. as Nominee for Iberiabank Mortgage Company,  on March 26, 2012 in Pinellas County, FL; and, Assignment of Mortgage/Deed of Trust recorded in the Official Records of Madison County, MS on April 13, 2012 at Book 2777, Page 272 which is allegedly signed by Ms. Wilson Doaty as a Vice President of Mortgage Electronic Registration Systems, Inc. as Nominee for Capital One Home Loans,, LLC on March 30, 2012 in Pinellas County, FL.;  a true and correct copy of the Assignments are attached as Composite Exhibit "P".

98.    All Assignments attached as Exhibit "P" were also prepared by Defendants Lance and NTC.

99.    Upon information and belief, the Assignment that was prepared by Defendant NTC and Defendant Lance in Florida was witnessed by Defendants Anderson and Knox in Ouachita Parish, Monroe, Louisiana on August 22, 2012.

100.    Upon information and belief, the Assignment that was prepared by Defendant NTC and Defendant Lance in Florida was notarized by Defendant Payne in Ouachita Parish, Monroe, Louisiana on August 22, 2012.

101.    Upon information and belief, Defendants knew or should have known that Chase was not the Attorney-in-Fact for the FDIC on August 22, 2012, and that Defendants' acts were intentional acts, in furtherance of a conspiracy to injure the Ameses by slandering their title to the Property in a knowingly fraudulent attempt to take the Property through non-judicial foreclosure.

102.    Upon research, information and belief, WaMu FA, WaMu NA and Chase's origination, securitization, document custody, mortgage servicing, financial and accounting records will establish that imaged copies of Plaintiffs' Note and Security Deed and/or its wet-ink originals were intended and/or were securitized to an undisclosed securitized trust since this was

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

the customary business practice of WaMu FA for promissory notes the in the amount of the Ames's' Note.

103.     Upon research, information and belief, it was customary for WaMu FA and WaMu NA, to create unrecorded "assignments in blank" to be executed wherein the original wet-ink notes and blank assignments were assigned and/or transferred to one of three special purpose vehicles ("SPV"(s)) used by WaMu FA and WaMu NA to securitize mortgage loans of this amount.

104.     Upon research, information and belief, after the transfers, the original wet-ink promissory notes that were intended to be sold and transferred to one of the three SPVs remained with the SPV and were never physically transferred to any entity outside the SPV including the Ames's following the closing on the Note and execution of the Security Deed on March 30, 2007.

105.     Upon information and belief, Plaintiffs' Note was not subject to or a part of the Purchase Agreement and Chase can be nothing more than the servicer of the debt evidenced by the Note, with no pecuniary interest in the Note and, therefore, no authority to enforce the Security Deed.

106.     Authority to enforce the Note is only as binding as the authority the a principal has and, on information and belief, neither Chase nor said principal can provide evidence of a pecuniary interest in or physical possession and custody of the original wet-ink Note since its origination, nor its recognition as an asset on the books of WaMu FA or WaMu NA or any other purported lender, including Chase.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

26

107.   The facts alleged herein, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant relief.

### FIRST CAUSE OF ACTION
DECLARATORY JUDGMENT OF INVALIDITY OF TRANSFER
(AS TO CHASE)

108.   Paragraphs 1-107 are incorporated by reference as if stated herein verbatim.

109.   The Ames's contend that their loan was never lawfully transferred from WaMu NA f/k/a WaMu FA to the FDIC on or before September 25, 2008, because the Security Deed and Note was not a recognized asset of WaMu NA f/k/a WaMu FA as defined by FAS 140 accounting and reporting standards for transfers and servicing of financial assets and extinguishments of liabilities on September 25, 2008.

110.   The Ameses are entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and2202 declaring the purported transfer of the Security Deed and Note from WaMu NA f/k/a WaMu FA to the FDIC invalid.

WHEREFORE Plaintiffs pray that the is Honorable Court enter a declaratory judgment declaring the purported transfer of the Security Deed and Note from WaMu NA f/k/a WaMu FA to the FDIC invalid and award them other relief as the Court deems proper

### SECOND CAUSE OF ACTION
DECLARATORY JUDGMENT OF INVALIDITY
OF TRANSFER BY OPERATION OF LAW UNDER 12 U.S.C. § 1821(d)(2)(G)(i)(II)
(AS TO CHASE)

111.   Paragraphs 1-107are incorporated by reference as if stated herein verbatim.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

112.    The Ameses contend that even if this Court finds that their loan was validly transferred from WaMu NA f/k/a WaMu FA to the FDIC on September 25, 2008, that the purported transfer of the Security Deed and Note from the FDIC to Chase on September 25, 2008, was not by operation of law under 12 U.S.C. § 1821(d)(2)(G)(i)(II) but rather, was a voluntary transfer subject to the Purchase Agreement dated September 25, 2008, between the FDIC and Chase.

113.    The Ameses are entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the purported transfer of their loan from WaMu NA f/k/a WaMu FA to the FDIC on September 25, 2008, to be a voluntary transfer and not a transfer by operation of law under 12 U.S.C. § 1821(d)(2)(G)(i)(II).

WHEREFORE Plaintiffs pray that the is Honorable Court enter a declaratory judgment declaring the purported transfer of their loan from WaMu NA f/k/a WaMu FA to the FDIC on September 25, 2008, to be a voluntary transfer and not a transfer by operation of law under 12 U.S.C. § 1821(d)(2)(G)(i)(II) and award them other relief as the Court deems proper.

### THIRD CAUSE OF ACTION
DECLARATORY JUDGMENT OF VOID ASSIGNMENT
(AS TO CHASE, NTC, LANCE, DOATY, BURCH, KHAN AND ANDERSON)

114.    Paragraphs 1-107 are incorporated by reference as if stated herein verbatim.

115.    The Ameses contend that the assignment of the Security Deed purported to have occurred on August 22, 2012, is void as a matter of law.

116.    Specifically, the Ames's contend that the Assignment is void because:

    i.    the LPOA from the FDIC appointing Chase as its Attorney-in-Fact was automatically revoked by its own terms on September 25, 2010;

    ii.    the Assignment lacks the signature block required by the LPOA;

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

   iii.    the LPOA and the Assignment violate the equal dignity rule;

   iv.    Chase lacked any authority to create the Assignment on August 22, 2012, and

   v.    Chase lacked any authority to record the Assignment in Fulton County, Georgia on September 4, 2012, rendering the Assignment void as a matter of law.

117.   The Ames's are entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and2202 declaring the purported Assignment of the Security Deed dated August 22, 2012, void.

WHEREFORE Plaintiffs pray that the is Honorable Court enter a declaratory judgment stating that the fraudulent Assignment is void and that it should be cancelled of record on Fulton County, Georgia Real Estate records, award them other relief as the Court deems proper.

### FOURTH CAUSE OF ACTION
DECLARATORY JUDGMENT OF VOID INDORSEMENT ON THE NOTE
(AS TO CHASE AND RILEY)

118.   Paragraphs 1-107are incorporated by reference as if stated herein verbatim.

119.   The Ames's contend that under O.C.G.A. §§ 11-3-203 *et seq.*, 11-3-204*et seq.*,and 11-3-308 *et seq.*, (2012), the indorsement on the Note is invalid and/or a forgery, that the Note has not been negotiated to Chase under O.C.G.A. § 11-3-201(a) as a matter of law and that Chase is not a holder of the Note as a matter of law, lacking any authority, therefore, to enforce the debt evidenced by the Note.

120.   The Ameses are entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and2202 declaring the purported indorsement on the Note void.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1,
2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

29

WHEREFORE Plaintiffs pray that the is Honorable Court enter a declaratory judgment stating that the alleged Riley indorsement is void and award them other relief as the Court deems proper.

### FIFTH CAUSE OF ACTION
ATTEMPTED WRONGFUL FORECLOSURE
(AS TO CHASE AND AC)

121.   Paragraphs 1-107 are incorporated by reference as if stated herein verbatim.

122.   In September and November, 2012 as shown by Exhibits G and H, Defendants did knowingly and intentionally cause to be published untrue and derogatory information concerning the Ameses' financial condition by declaring to the public that their loan was in default. Plaintiff Cindy Ames was not a party to the Note and Plaintiff David Ames was not in default under the loan documents.

123.   As a direct result of Defendant Chase's knowingly and intentional publication of default of the Note, the Ameses' have suffered specific damages in an amount to be determined at trial, and special damages in the form of embarrassment, humiliation, reduced credit scores and diminution in value of the Property as a direct result of Chase's knowingly untrue publication concerning the Ameses' financial condition.

WHEREFORE, Plaintiffs respectfully request an award of damages in their favor and against defendants for damages and an award of attorneys' fees and costs and for all other relief to which this Court finds just and appropriate.

### SIXTH CAUSE OF ACTION
CIVIL CONSPIRACY TO SLANDER
THE AMES'S TITLE TO THE PROPERTY
(AS TO CHASE, NTC, LANCE, DOATY, BURCH, KHAN AND ANDERSON)

124.   Paragraphs 1-107 are incorporated by reference as if stated herein verbatim.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

125.    Defendants acted together by common design to fraudulently attempt to take the Property through knowingly and intentional wrongful acts.  As a result of Defendants' knowingly and intentional fraudulent conduct, the Ameses title to the Property has been clouded and the deed to the Property is a wild deed.  The Defendants' acts in furtherance of the conspiracy to take the Property has slandered the Ameses' title to the Property and Plaintiffs have suffered monetary damages as a direct and proximate cause of Defendants acts in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request an award of damages in their favor and against defendants for damages and an award of attorneys' fees and costs and for all other relief to which this Court finds just and appropriate.

### SEVENTH CAUSE OF ACTION
MORTGAGE FRAUD IN VIOLATION OF
O.C.G.A § 16-8-101 *et seq.*

126.    Paragraphs 1-107 are incorporated by reference as if stated herein verbatim.

127.    In July of 2012 the Legislature in Georgia determined Mortgage Fraud was rampant and under the Editor's notes. - Ga. L. 2005 p. 848, § 1, not codified by the General Assembly, provided that:

> The General Assembly finds and declares that fraud involving residential mortgages is at an all-time high in the United States and in Georgia. Mortgage lending institutions and borrowers have suffered hundreds of millions of dollars in losses due to residential mortgage fraud. Homeowners in neighborhoods plagued by mortgage fraud have witnessed the deterioration of their neighborhoods. Fraudulently inflated property values in their neighborhoods have resulted in substantial increases in property taxes. The General Assembly therefore concludes that for the protection of the general public, and particularly for the protection of borrowers, homeowners, lending institutions, and the integrity of the mortgage lending process, the 'Georgia Residential Mortgage Fraud Act' shall be enacted."

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

31

128.   As a result, Georgia's Residential Mortgage Fraud Act, O.C.G.A. § 16-8-100 *et*

*seq.* was amended in 2012 to provide:  16-8-101. Definitions.  As used in this article, the term:

> (1) "Mortgage lending process" means the process through which a person seeks or obtains a residential mortgage loan including, but not limited to, solicitation, application, or origination, negotiation of terms, third-party provider services, underwriting, signing and closing, and funding of the loan. **Such term shall also include the execution of deeds under power of sale that are required to be recorded pursuant to Code Section 44-14-160 and the execution of assignments that are required to be recorded pursuant to subsection (b) of Code Section 44-14-162.** Documents involved in the mortgage lending process include, **but shall not be limited to,** uniform residential loan applications or other loan applications; appraisal reports; HUD-1 settlement statements; supporting personal documentation for loan applications such as W-2 forms, verifications of income and employment, bank statements, tax returns, and payroll stubs; and any required disclosures.

(emphasis added)

129.   Beginning on the dates indicated herein and at all times material, Defendant

Chase assert that it is a 'secured creditor', and thus set in motion a Default, Acceleration, and

Notice of Default and Notice of Non-judicial Foreclosure Sale that was statutorily required to

comply with  OCGA § 44-14-162.2[8].

130.   Defendant Chase has failed to comply with the non-judicial foreclosure statute

because at all times material hereto was not a "secured creditor".

---

[8]**Sales Made On Foreclosure Under Power Of Sale -- Mailing Of Notice To Debtor -- Procedure For Mailing Notice.** (a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract *shall be given* to the debtor by the *secured creditor* no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the *secured creditor*.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

131.   Defendant AC as the attorneys for defendant Chase have failed to determine what the true status of their client was prior to initiating a non-judicial foreclosure proceeding, and thereby have attempted to conduct an illegal noncompliant non-judicial foreclosure as against the Plaintiffs by asserting rights of an unsecured creditor.

132.   Defendant Chase and Defendant AC have unclean hands and are acting outside of the authority as created in Georgia under the non-judicial foreclosure statutes.

133.   Defendants purposely lied, intentionally mislead and concealed material facts from Plaintiffs throughout the foreclosure process from initial contact through and during the final stages when their mortgage was being foreclosed upon by Defendants, by failing to be a statutorily 'secured creditor'.

134.   The foreclosure transaction was not conducted in good faith nor were Defendants Chase or AC acting fairly, or dealing fairly with candor regarding the Plaintiffs and the initiation of foreclosure proceedings upon Plaintiff's property.

135.   Defendant by their actions have through a course of conduct, violated legal rights of Plaintiffs, and through their actions have committed actual fraud upon Plaintiffs.

136.   These violations are and were a matter of Defendant's policy, and procedure and constitute unlawful corporate behavior.

137.   Defendants, through their collective willful actions, fraud, deceit and concealment have violated the Georgia Residential Mortgage Fraud Act.

WHEREFORE, Plaintiffs respectfully request an award of damages in their favor and against defendants for damages and an award of attorneys' fees and costs and for all other relief to which this Court finds just and appropriate.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

### EIGHTH CAUSE OF ACTION
BREACH OF CONTRACT-SECURITY DEED AND PROMISSORY NOTE
BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
(AS TO CHASE)

138.   Paragraphs 1-107 are incorporated by reference as if stated herein verbatim.

139.   It is undisputed that a contract for which the subject is property is collateral exists; one needs look no further than the Promissory Note that attached as   Exhibit D-1 and the Security Deed that is attached as Exhibit F-2 .

140.   Plaintiffs allege the facts in support of their claim for breach of ¶22 of the Security Deed and ¶7(A) of the Promissory Note in paragraphs 69-73.

141.   Plaintiffs allege that Defendant, Chase, has breached the implied covenant of good faith and fair dealing based upon its decision to charge two and three times the contractual late payment fee in violation of the express terms of ¶7(A) of the Promissory Note.

142.   Plaintiffs further allege that Defendant, Chase, also breached ¶22 of the Security Deed because by misrepresenting and overinflating the amount owed as late fees it failed to perform a condition precedent to acceleration of the alleged defaulted debt.

143.   Plaintiffs allege that by overinflating the amount necessary to cure the alleged default Defendant Chase robbed them of their contractual right to cure the alleged default despite being notified by Plaintiffs of the many concerns regarding the alleged default. See Exhibits B and E.

144.   Plaintiffs have alleged proximately caused damages from the alleged breaches of contract set forth in this count.

145.   Plaintiffs also claims as an element of their damage and in isolation their attorney's fees and costs.

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1,
2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

**NINTH CAUSE OF ACTION**
VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692 *et seq.*
(AS TO ALL DEFENDANTS)

146. Paragraphs 1-107are incorporated by reference as if stated herein verbatim.

147. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in unfair and/or deceptive practices during the collection of a debt. Plaintiffs, are "consumers" within the meaning of FDCPA, 15 U.S.C. §1692a(3).

148. Defendants have engaged in collection of "debts" as this phrase is defined by 15 U.S.C. §1692a(5) allegedly owed by Plaintiff, David Ames. Defendants sought to non-judicially foreclose the subject Security Deed after David Ames alleged default and are "debt collectors" under 15 U.S.C. §1692g.

149. Chase and AC further violated the FDCPA by claiming in its Notices of Non-Judicial Foreclosure that Cindy Ames has defaulted on the alleged debt when she is not a maker of the indebtedness.

150. It is Plaintiffs' good faith belief that the Assignment of Security Deed, created by Defendants, Chase, NTC, Lance, Doaty, Burch, Knox and Anderson, was created through collusion between these defendants and/or Aldridge to support the claimed right to enforce the alleged defaulted debt when there is no present right to possession of the property claimed as collateral through an enforceable security interest as proscribed by 15 U.S.C. §1692f(6).

151. Defendants' collection activities described herein violate the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692a *et seq.*) in that defendants' were claiming, attempting and threatening to collect and enforce this consumer mortgage debt by foreclosure

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1,
2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

action where they know or should have known that the right to pursue non-judicial foreclosure does not exist under the law because:

    a.  Chase is not the secured creditor as to the Ames loan;

    b.  Chase has failed to comply with the statutory and contractual conditions precedent to non-judicial foreclosure;

    c.  Defendants' unconscionable, deceptive methods and practices in collecting this loan should preclude them from seeking enforcement of the alleged defaulted debt.

152.    The assignment of security deed occurred after the alleged default. As such, Chase obtained the alleged defaulted debt well after the alleged default and is considered a "debt collector" under 15 U.S.C. §1692g. Any denial to the contrary must be supported by strict and convincing evidence. Further, merely labeling oneself as a servicer when, in fact, a large percentage of your business is collecting a debt also qualifies all defendants as "debt collectors" under the law.

153.    Further, Plaintiffs have been subjected to a variety of "default" fees and charges including, but not limited to, attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, forced placed insurance, and other charges and advances; all of which are not authorized by or in conformity with the terms of the subject note and mortgage.

154.    These acts as well as the attempted non-judicial foreclosure are wrongful, intentional, reckless, willful and wanton, negligent, deceptive, and predatory. Defendants knew they should not falsify documents particularly sworn documents meant to prove a material fact such secured creditor status. The perjured documents violate 15 U.S.C. §1692e(10) and 15 U.S.C. §1692f

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1, 2012, and to In Re: Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*

155.    As a result of the aforesaid FDCPA violations, Plaintiffs have been subjected to false and illegal collection activities, and have therefore been harmed due to the slander to David Ames credit and emotional/physical health issues proximately caused by these defendants. Plaintiffs have retained counsel and is entitled to reimbursement of their costs and attorney's fees pursuant to 15 U.S.C. §1692k(3).

WHEREFORE, Plaintiffs respectfully request: an award of damages in their favor and against defendants for their actual or statutory damages whichever is greater; and an award of attorneys' fees and costs and for all other relief to which this Court finds just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Jacqulyn Mack, Esq.
jacqulyn@MackLawFirm.org
Primary:eservice1@macklawfirm.org
Secondary:eservice2@macklawfirm.org
**MACK LAW FIRM CHARTERED**
2022 Placida Road
Englewood, Florida  34224-5204
(941) 475-7966 telephone
(941) 475-0729 facsimile
And
27 Fletcher Avenue
Sarasota, Florida 34237
(941) 893-6381 telephone
(941) 955-2148 facsimile
Counsel for Plaintiffs

Mack Law Firm Chartered
2022 Placida Road ☼ Englewood Florida 34224-5204 ☼ (941) 475 7966 T ☼ (941) 475-0729 F ☼
www.MackLawFirm.org
*This pleading serves as designation of email addresses pursuant to Fla. R. Jud. Admin. 2.516, effective September 1,*
*2012, and to In Re:  Email Service Rule No. SC 102101 (Second Corrected Opinion issued June 21, 2012)*