CINDY J. AMES and DAVID R. AMES,

                Plaintiffs,

           v.                              Case No. 8:13-cv-00806-SDM-MAP

JPMORGAN CHASE BANK, N.A.,
NATIONWIDE TITLE CLEARING, INC.;
ERIKA LANCE; CYNTHIA A. RILEY,
LAQUINA WILSON DOATY, PEARL
BURCH, LASHONDA ANDERSON,
SHEQUITA KNOX, and ANGELA RUTH
PAYNE, AND ALDRIDGE CONNORS, LLP
AND JOHN DOES 1-10,

                Defendants.

_____/

## DISPOSITIVE MOTION

## DEFENDANT CYNTHIA RILEY'S MOTION TO DISMISS

      Defendant Cynthia Riley, by and through her undersigned counsel, hereby respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint filed by Plaintiffs on March 28, 2013, and states as follows:

## PRELIMINARY STATEMENT

      In March 2007, Plaintiffs executed a promissory note with Washington Mutual Bank ("WaMu") that forms the basis of this action in the amount of $4.65 million to re-finance their 31,000 square foot Georgia house on 1.6 acres in Alpharetta, Georgia.[1]

---

[1] *See* Compl. Ex. C-1 (Part I) (D.E. 1-5 at 37) (HUD Settlement Statement reflecting total loan amount of $4.65 million); *see also id*. Ex. C-2 (Part I) (D.E. 1-7 at 25) (description of property); *id*., Ex. E (D.E. 1-10 at 1) (Plaintiffs' attorney's description of the property as "the largest single poured concrete foundation in the entire state of Georgia. The _interior finished square footage is 31,000 sq. ft._") (double emphasis in original).

Plaintiffs' cash-out re-finance netted them over half a million dollars.[2]  Three years later, in 2010, Plaintiffs defaulted.  Defendant JP Morgan Chase Bank, N.A. ("Chase"), as successor-in-interest to WaMu, initiated foreclosure proceedings against the property when Plaintiffs failed to pay their $22,765.63 monthly obligation under the terms of their 2007 cash-out re-finance.[3]  Plaintiffs continue to live in their Georgia property notwithstanding that they have failed to pay their nearly $23,000.00 monthly obligation for over two-and-a-half years.

On December 19, 2012, Plaintiffs brought a lawsuit against Chase, Cynthia Riley, and Aldridge Connors, LLP in Georgia Superior Court in Fulton County, alleging substantially the same claims for wrongful foreclosure and declaratory relief that they allege in the instant action.  Request for Judicial Notice ("RJN") Ex. 1, Georgia Summons and Verified Complaint (D.E. 19-1).  The Georgia Court asserted jurisdiction over the property at issue as evidenced by the Notice of Lis Pendens filed in the state court proceeding on December 19, 2012.  RJN Ex. 2, Notice of Lis Pendens (D.E. 19-2); *see Hendricks v. Mortg. Elec. Registration Sys., Inc.*, No. 8:12-CV-2801-T-30TGW, 2013 WL 1279035, at *4 (M.D. Fla. Mar. 28, 2013).  After voluntarily dismissing the Georgia case, Plaintiffs filed the instant action on March 28, 2013, asserting multiple violations of Georgia statutory and common law, violation of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.*, and entitlement to declaratory relief (the "Complaint").

On April 30, 2013, one month after filing this case in the Middle District of Florida, Plaintiffs resurrected their Georgia state law proceedings, again seeking to enjoin

---

[2] *See* Compl. Ex. C-1 (Part II), (D.E. 1-5 at 37) (reflecting $557,580.93 cash to borrower).

[3] Compl. at ¶¶ 78–82.

the foreclosure sale of their property. RJN Ex. 3, April 30, 2013 Summons and Verified Petition for Temporary Restraining Order. (D.E. 19-4).[4] Thus, Plaintiffs currently have parallel proceedings—one pending in Georgia state court 26 miles away from the subject property and one pending in Florida district court 460 miles away from the subject property—both seeking to prevent the foreclosure of their Georgia property under Georgia law.[5] *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 820 (1976) (federal court's decision to abstain in favor of parallel state court proceeding properly informed by "the 300-mile distance between the District Court in Denver and the [state] court in [the region containing the disputed rivers and tributaries]").

As a threshold matter, under well-established abstention principles, in light of the parallel state court proceedings, Ms. Riley respectfully submits that this Court should abstain from ruling on the disputed foreclosure of a residential property in Georgia, "a subject typically adjudged in the state court and governed by state law." *Preston v. Fishman*, No. 8:10-CV-2300-T-23, 2011 WL 129843, at *2 (M.D. Fla. Jan. 14, 2011). In determining the propriety of the currently pending Petition for Temporary Restraining Order ("Georgia Petition"), the Georgia state court will no doubt, among other things,

---

[4] After filing and serving their summons and petition, which ordinarily provides 30 days for response, Plaintiffs moved for expedited consideration in light of a scheduled May 7, 2013 foreclosure sale. *See* RJN Ex. 4, May 1, 2013 Motion for Temporary Restraining Order (D.E. 19-4). When that sale date was canceled, Plaintiffs withdrew their motion for expedited relief in favor of the currently pending Verified Petition for Temporary Restraining Order. *See* RJN Ex. 5, Notice of Withdrawal (D.E. 19-5). Plaintiffs have not dismissed their April 30 Verified Petition for Temporary Restraining Order and still seek an injunction in Georgia state court to prevent the foreclosure of the property pursuant to the pending Petition.

[5] As the U.S. Supreme Court has recognized, a federal court's granting of declaratory relief is tantamount to the issuance of an injunction. *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would"). To the extent that Plaintiffs are asking this Court to hold that Chase has no right to foreclose on their property as a matter of law, Plaintiffs in essence are asking this Court to preclude Chase's sale of their house in foreclosure.

consider the likelihood of success on the merits of the very claims pending before this Court. In fact, the Georgia Petition recites those claims almost verbatim. *Compare* RJN Ex. 3, Petition for Temporary Restraining Order at ¶ 8 (D.E. 19-3) (citing causes of action for "(i) Attempted wrongful foreclosure, (ii) civil conspiracy to slander the Ameses['] title to their property, (iii) violations of the Fair Debt Collection Practices Act ('FDCPA') 15 U.S.C. § 1692 et seq.; and, iv) mortgage fraud in violation of O.C.G.A. § 16-8-101 et seq.") *with* Compl. Fifth Cause of Action, Sixth Cause of Action, Ninth Cause of Action, and Seventh Cause of Action.

Therefore, to the extent that the Georgia state court must adjudicate the merits of Plaintiffs' underlying claims, there is a risk of inconsistent rulings and piecemeal litigation—precisely the risk that the *Colorado River* abstention doctrine was intended to avoid. *Colorado River*, 424 U.S. at 817 (abstention principles rest on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation") (internal quotation marks and alterations omitted).

Plaintiffs seek declaratory relief from this Court challenging a transfer of their loan from WaMu to Chase that, according to black letter law in Georgia, they lack standing to bring. *Breus v. McGriff*, 202 Ga. Ct. App. 216, 413 S.E.2d 538, 539 (1991) ("[S]trangers to the assignment contract . . . have no standing to challenge its validity."); *see also Moore v. McCalla Raymer, LLC*, No. 1:12-CV-1714-TWT, 2013 WL 28253, at *8 (N.D. Ga. Jan. 2, 2013) (Georgia "[c]ourts have repeatedly rejected the argument that a homeowner has standing to challenge the assignment of a security deed which grants the assignor a power of sale."). Plaintiffs have represented to the Georgia state court in their Petition for Temporary Restraining Order that if this Court "finds that the transfer

could not and did not occur as a matter of law, and that the Assignment is void as a matter of law," they

> hereby bring an action [in Georgia state] court for:
>
> i)  Attempted wrongful foreclosure;
> ii) civil conspiracy to slander the Amses['] title to their property;
> iii) violations of the Fair Debt collection Practices Act ("FDCPA") 15 U.S.C.
> § 1692 et seq.; and,
> iv) mortgage fraud in violation of O.C.G.A. § 16-8-101 et seq.

RJN Ex. 3 (D.E. 19-3 at ¶ 8).[6]  In essence, Plaintiffs ask this Court to determine a matter of Georgia state law in their favor so they can return to Georgia with that declaration in hand and ask the Georgia state court to enjoin the sale of the Property over which it has jurisdiction, and prosecute claims in a state court *in rem* proceeding involving the very issues of law they now ask the federal court to determine.

Even if the Court does not see fit to abstain from entertaining what is essentially a Georgia state law action filed in Florida federal court in favor of a pending parallel Georgia state court proceeding, there are *no* cognizable claims against Ms. Riley alleged in the Complaint. Only three causes of action are alleged against Ms. Riley individually: the Fourth Cause of Action for "Declaratory Judgment of Void Indorsement on the Note," the Seventh Cause of Action for "Mortgage Fraud in Violation of O.C.G.A. § 16-8-101 *et seq.*," and the Ninth Cause of Action for "Violation of the Fair Debt Collection

---

[6] These causes of action are parallel to the Fifth, Sixth, Seventh, and Ninth Causes of Action in the present Complaint in this Court.  In bringing these four causes of action before the Georgia court, Plaintiffs concede that Georgia—the state in which the property at issue is located and the state whose law governs this matter—is the proper forum for these claims.

Practices Act 15 U.S.C. § 1692 *et seq.*"  Each of these causes of action manifestly fails to state a claim against Ms. Riley.

*First*, the Fourth Cause of Action for "Declaratory Judgment of Void Indorsement on the Note"—the only count that even nominally involves Ms. Riley—fails to state a claim against Ms. Riley by Plaintiffs' own lights.  Plaintiffs allege the indorsement on the note is "forged" and intended to "slander the Ameses title to their Property."  Compl. at ¶ 61.  But this allegation necessarily precludes Ms. Riley's involvement, as she obviously cannot "forge" her own signature.  Indeed, the Complaint affirmatively alleges Ms. Riley *did not* sign the Ameses' promissory note (the "Note") on the Ames property, Compl. at ¶ 60 (alleging "the indorsement . . . *was not signed by Riley*" and "Riley . . . did not indorse the Note") (emphasis added), and someone else forged Ms. Riley's signature, Compl. at ¶ 61 (alleging "the indorsement is a forged indorsement").

*Second*, the Seventh Cause of Action for "Mortgage Fraud in Violation of O.C.G.A. § 16-8-101 *et seq.*"—even if it did give rise to a private right of action (it does not)—cannot apply to Ms. Riley on its face, as Plaintiffs do not (because they cannot) allege Ms. Riley was involved in any way in the "mortgage lending process."  O.C.G.A. 16-8-101(1).

*Third*, the Ninth Cause of Action for "Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.*" is devoid of any allegations against Ms. Riley.  Indeed, she is not mentioned once in this cause of action, nor do Plaintiffs allege Ms. Riley had any connection with Plaintiffs' 2012 foreclosure proceedings, let alone that she acted as a debt collector within the plain meaning of the statute.

For the foregoing reasons, as well as the reasons in Chase's contemporaneously filed Motion to Dismiss (D.E. 15), which Ms. Riley joins and hereby incorporates by reference, all claims against Ms. Riley should be dismissed with prejudice. *See also* Joinder in Motion to Dismiss (D.E. 17).

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). When considering a 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). However, conclusory allegations or allegations that are no more than a statement of legal conclusion "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. A court should consider only those facts that are well pled and "then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 664. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

## ARGUMENT

**I.      The Court should abstain from deciding Georgia state law issues in this case that are the subject of pending litigation in Georgia state court.**

As this Court previously explained, "the state forum enjoys a surpassing advantage in experience in, and knowledge of, foreclosure and pertinent state property law principles." *Preston*, 2011 WL 129843, at *2 (Merryday, J.). Indeed, "mortgage foreclosure and real property are signally a state law concern." *Id.* Consistent with these principles, the Court should not countenance Plaintiffs' thinly-veiled attempt to seek a

more favorable federal forum for the foreclosure-related Georgia state law claims that Plaintiffs previously submitted to, and which are currently pending before, the Superior Court in Fulton County, Georgia.

It is well-settled that Federal courts have discretion to abstain from hearing actions that require them to determine issues of state law where those same issues are simultaneously pending in state court, particularly where the disputed issues "are signally a state law concern." *See generally Colorado River*, 424 U.S. 800; *Hendricks*, 2013 WL 1279035, at *1. And although that discretion is not to be exercised lightly in most cases, the Court enjoys substantially greater discretion in cases—like this one—where the plaintiffs seek relief under the Federal Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River*"). In any event, few circumstances merit abstention more than cases— like this one—where a plaintiff voluntarily dismisses a state court action in the state where the *res* at issue is located and over which the state court has exercised jurisdiction, re-files in federal court in a *different* state with hopes that the federal court will more favorably construe the state law of the original—and more proper—forum, and then *re-commences* a state court action to enjoin the sale of the subject property with the anticipated benefit of a favorable federal court declaration of controlling state law.

Abstention under *Colorado River* is appropriate in the first instance when federal and state proceedings involve substantially the same parties and substantially the same issues. *See Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325, 1327 (S.D. Fla. 2002) *aff'd sub nom. Lisa, S.A. v. Dionisio Gutierrez Mayorga*, 90 F. App'x 381 (11th Cir. 2003) ("Exact parallelism between the two actions, however, is not required; merely the existence of

substantially the same parties litigating substantially the same issues in different fora must be present."). The parties and issues need not be identical. *See id.* at 1329–30.[7] Because "both [the federal and state actions] relate to the validity of the mortgage on the [p]roperty" and "[c]entral to Plaintiffs' claims [in both cases] is whether the promissory note related to the Property was properly transferred by the original lender and whether a valid mortgage still exists," it is clear that "this case meets the threshold requirement for application of the *Colorado River* abstention doctrine." *See Hendricks*, 2013 WL 1279035 at *3.

The court in *Colorado River* delineated six factors that federal courts should consider when deciding whether to abstain: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights. *Allied Mach. Serv., Inc. v. Caterpillar Inc.*, 841 F. Supp. 406, 408 (S.D. Fla. 1993); *Rambaran v. Park Square Enters., Inc.*, No 6:08-CV-247-ORL19GJK, 2008 WL 4371356, at *4 (M.D. Fla. Sept. 22, 2008); *see also Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999) ("The decision whether to stay or dismiss in favor of concurrent state court litigation does not rest on a mechanical checklist of factors, but on a careful balancing of the factors as they apply in a given case. Weight given to any one

---

[7] Here, the same two Plaintiffs first raised the allegations in the present Complaint— against virtually all of the same defendants—in December 2012 before the Superior Court of Fulton County, Georgia (Case No. 2012CV225111), also seeking to enjoin the sale of their Georgia mansion. Plaintiffs later voluntarily dismissed that complaint on February 25, 2013, and filed the present Complaint here in Florida federal court on March 28, 2013. One month later, however, on April 30, 2013, Plaintiffs re-commenced proceedings against defendants in the Superior Court of Fulton County, Georgia (Case No. 2013CV230620), again seeking to enjoin the sale of the subject property and asserting four causes of action identical to those presently pending before this Court.

factor may vary greatly from case to case."). As set forth below, each factor counsels heavily in favor of abstention in this case.

### A. The state court has exercised jurisdiction over the property at issue.

The Superior Court of Fulton County, Georgia clearly exercised jurisdiction over the Plaintiffs' property by virtue of the Notice of Lis Pendens filed and recorded by the court on December 19, 2012. *See Hendricks*, 2013 WL 1279035, at *4 (state court's exercise of jurisdiction over property evidenced by notice of lis pendens) (citing Black's Law Dictionary 950 (8th ed. 2004) (defining "lis pendens" as "[t]he jurisdiction, power, or control acquired by a court over property while a legal action is pending")). Plaintiffs' decision to voluntarily dismiss their original Georgia state court action changes nothing. Indeed, Plaintiffs resurrected their original Georgia action by filing a Verified Emergency Petition (Civil Action File No. 2013CV230620) predicated on the same theory of liability, again seeking to enjoin foreclosure of their property. As such, this "first factor weighs in favor of abstention." *See Hendricks*, 2013 WL 1279035, at *4.

### B. The federal forum is inconvenient.

The Middle District of Florida is not a convenient forum for adjudicating Plaintiffs' claims. As an initial matter, the subject property is located in Georgia—as are Plaintiffs themselves. Compl. at ¶ 3. So, too, is defendant Aldridge Connors. *Id.* at ¶ 14. Meanwhile, defendants Doaty, Burch, Anderson, Knox, and Payne are—as Plaintiffs concede and affirmatively allege—residents of the state of Louisiana. *Id.* at ¶¶ 8–13. In short, neither the subject property—over which the Georgia state court has already exercised jurisdiction—nor any of the core percipient witnesses—all of whom are parties—are located in Florida, making this Court an inconvenient (and illogical) forum.

### C.     There is considerable potential for piecemeal litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Bosdorf*, 79 F. Supp. 2d at 1344.  In both the case before this Court and that pending in Georgia state court, Plaintiffs seek to prevent the foreclosure of their Georgia property under Georgia law.

While Plaintiffs do not expressly seek an injunction from this Court, the declaratory judgment Plaintiffs seek here has the practical effect of enjoining Chase's foreclosure of their property.  "[T]he declaration contemplated here [is] to be *res judicata*, so that the (state court) can not hear evidence and decide any matter for itself . . . [such that] the federal court has virtually lifted the case out of the State (court) before it could be heard." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 247 (1952)); *see also Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004) ("declaratory relief has the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment").

Given the duplicative nature of Plaintiffs' claims in the Georgia proceedings and this lawsuit (*see* note 6 *supra*), the potential for piecemeal litigation weighs heavily in favor of abstention.  *See Delta Dev. & Const. v. Sav. One Ass'n*, 637 F. Supp. 629, 631 (S.D. Fla. 1986) (finding interference with "the orderly and comprehensive disposition of the state court proceeding to be inutile and ill-advised" because allowing "these actions to go forward in federal court [would] result in piecemeal litigation" and, due to "the fact that both the federal and state actions spring from the same transactions or occurrences, fragmented disposition would lead to inconsistent results"); *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D. N.J. 2009) (warning that inconsistent federal and state court rulings concerning the propriety of a "foreclosure would throw into turmoil the parties'

rights and obligations over plaintiff's home and mortgage, as well as the comity between courts").

Because "piecemeal litigation will result if this federal case proceeds while the state . . . case continues, especially as the issues in both forums revolve around the same [Georgia] real estate, the Property," this Court should abstain from hearing this case in favor of the pending Georgia state court action. *See Hendricks*, 2013 WL 1279035, at *4. Moreover, the legal issues to be decided relating to the foreclosure of Plaintiffs' real property in Georgia are "signally a state law concern," making the need to avoid piecemeal litigation all the more critical in this case. *See Preston*, 2011 WL 129843, at *2.

### D.  The state court first obtained jurisdiction over the property.

The Superior Court of Fulton County, Georgia first exercised jurisdiction over the Property on December 19, 2012, when it filed and recorded a Notice of Lis Pendens on the property based on Plaintiffs' original state court action. *See* RJN Ex. 2, Notice of Lis Pendens (D.E. 19-2). Although Plaintiffs later voluntarily dismissed the original state court action in anticipation of filing the instant action in Florida federal court—presumably perceiving a tactical advantage in doing so—the state court remains the first court to have exercised jurisdiction over the Property.

### E.  Georgia law governs the claims in this action.

Abstention also is the superior course in this instance because Georgia law governs Plaintiffs' foreclosure-related claims alleged (nominally) against Ms. Riley. Although—for the reasons set forth in Section II-IV, *infra*—none of the causes of action in the Complaint actually implicates Ms. Riley, to the extent Plaintiffs purport to seek relief against her, they do so almost exclusively under Georgia foreclosure law. Indeed, the Complaint is replete with references to Georgia state law. *See, e.g.*, Compl. at ¶ 1

(citing O.C.G.A. §§ 11-3-201 *et seq.*, 11-3-203 *et seq.*, 11-3-204 *et seq.*, § 11-3-301 *et seq.*, and 11-3-308 *et seq.*); *id.* at ¶ 2 (citing O.C.G.A. § 16-8-101 *et seq.*); *id.* at 7 n. 2 (citing O.C.G.A. § 11-3-201); *id.* at 8 n. 3 (citing O.C.G.A. § 10-6-57); *id.* at ¶ 53 (citing O.C.G.A. § 11-3-204 (a)); *id.* at ¶ 54 (citing O.C.G.A. § 11-3-203(c)); *id.* at ¶ 55 (citing the Georgia Uniform Commercial Code); *id.* at ¶ 63 (citing O.C.G.A. 24-4-23).[8] Further, two of the three causes of action alleged against Ms. Riley are expressly predicated on O.C.G.A. §§ 11-3-203 *et seq.* (Fourth Cause of Action) and O.C.G.A. §§ 16-8-101 *et seq.* (Seventh Cause of Action).

Plaintiffs will likely counter that the Ninth Cause of Action alleges liability against Ms. Riley under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). To the extent Plaintiffs argue they have a federal hook in the FDCPA, Plaintiffs concede those claims are properly before the Georgia court over which it has concurrent jurisdiction and intend to prosecute those claims in state court.  *See* 15 U.S.C. § 1692k(d) ("[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction"); RJN Ex. 3 (D.E. 19-3 at ¶ 8) (asserting before the Georgia state court, "Plaintiffs hereby bring an action for; . . . (iii) violations of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 et seq.").

Furthermore, as detailed in Section IV below and Section IV(G) of Chase's Motion to Dismiss, the Ninth Cause of Action fails as a threshold matter of law and is

---

[8] *See also* Compl. at ¶ 65 (citing O.C.G.A. 44-14-162.2); *id*. at ¶ 67 (alleging Defendants acted in "contravention of Georgia law" and citing O.C.G.A. 44-14-162.2); *id*. at ¶ 69 (citing O.C.G.A. 16-8-101); *id*. at ¶ 70 (citing O.C.G.A. 16-8-102); *id*. at ¶ 94 (emphasizing the requirements "[u]nder Georgia law," citing O.C.G.A. §§ 10-6-2, 44-14-64(a), 44-14-61, 44-14-33, and citing Georgia case law); *id*. at ¶ 119 (citing O.C.G.A. §§ 11-3-203 *et seq.*, 11-3-204 *et seq.*, 11-3-308 *et seq.*, and 11-3-201(a)); *id*. at ¶ 127 (discussing and quoting Georgia legislature editor's notes); *id*. at ¶ 128 (citing amendments to Georgia's Residential Mortgage Fraud Act, O.C.G.A. § 16-8-100 *et seq.*); *id*. at ¶ 129 (citing O.C.G.A. § 44-14-162.2).

facially inapplicable to Ms. Riley.  Specifically, Ms. Riley is not—nor do Plaintiffs allege her to be—a "debt collector" of any sort.  Moreover, notwithstanding the Complaint's indication that the Ninth Cause of Action is "As to All Defendants," there are no allegations naming or otherwise connecting Ms. Riley to the Ninth Cause of Action, whereas all *nine* of the *other* defendants are specifically identified by name.  *See* Compl. at ¶¶ 149–55.  As such, there exists no federal question rationale for this Court to exercise jurisdiction over what are essentially exclusively Georgia foreclosure law issues between non-diverse parties (the Ameses and Defendant Aldridge Connors are all citizens of Georgia; *see* Compl. at ¶ 14).

It bears noting that the motive for Plaintiffs' strategic relocation of their lawsuit to a forum less familiar and less experienced with Georgia foreclosure law is apparent upon review of the Complaint. Plaintiffs seek to avoid well-settled law in Georgia that prohibits an attack on the validity of an assignment by non-parties to that assignment. *See Breus*, 413 S.E.2d 538, 539 ("[S]trangers to the assignment contract . . . have no standing to challenge its validity."); *see also Moore*, 2013 WL 28253, at *8 ("Courts have repeatedly rejected the argument that a homeowner has standing to challenge the assignment of a security deed which grants the assignor a power of sale.") (internal quotation marks and citation omitted); *McFarland v. BAC Home Loans Servicing, LP*, No. 1:11-CV-04061-RWS, 2012 WL 2205566, at *3 (N.D. Ga. June 14, 2012) (where borrower challenged defendant's standing to foreclose based on an allegedly defective assignment, court explained that "as a stranger to the Assignment contract, Plaintiff lacks standing to challenge it"). Instead, Plaintiffs suggest that *this* Court should apply inapposite case law from Michigan[9]—based on Michigan statutory law—so that Plaintiffs might assail the assignment of the Note from the FDIC to Chase in a way they are

---

[9] *See* Compl. at 7 n.1 (citing *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329 (2012)).

prohibited from doing under Georgia law. This Court should reject the invitation; this factor favors abstention.

### F.    The Georgia state court can adequately protect the parties' rights.

Finally, Plaintiffs allege no reason—and Defendants are aware of none—why the Superior Court of Fulton County, Georgia is an inadequate forum for Plaintiffs' Georgia state-law claims. In fact, to the contrary, this Court has recognized that "[t]he state forum enjoys a surpassing advantage in experience in, and knowledge of, foreclosure and pertinent state property law principles." *Preston*, 2011 WL 129843 at *2. The likelihood that a Georgia state court will apply well-settled principles of Georgia law that foreclose Plaintiffs' theory of liability does not render the state court ill-suited to hear Plaintiffs' claims.

## II.    Plaintiffs' Fourth cause of Action for "Declaratory Judgment of Void Indorsement on the Note" Fails to Allege *Any* Action Taken By Ms. Riley and, Therefore, *Ipso Facto*, Fails to State a Claim Against Ms. Riley.

The only factual allegations in the Complaint concerning Ms. Riley are allegations that her stamped signature appears on Plaintiffs' Note. *See* Compl. at ¶¶ 1, 7, 25, 59–62. The Complaint fails to allege any involvement *by Ms. Riley* in the purported improper indorsement of the Note. To the contrary, Plaintiffs affirmatively allege that Ms. Riley herself *took no action* in relation to Plaintiffs' Note. *See* Compl. at ¶ 60 (alleging "the indorsement . . . *was not signed by Riley*") (emphasis added); *see also id.* (alleging "Riley . . . did not indorse the Note").

Plaintiffs instead contend that Ms. Riley's signature appearing on the Note was "forged." *See* Compl. at ¶ 61 (alleging "the indorsement is a forged indorsement"). Plaintiffs' theory of liability against Ms. Riley is self-defeating.  Ms. Riley obviously cannot "forge" her own signature. If Ms. Riley's signature is, as Plaintiffs suggest, a "forgery," then by definition someone other than Ms. Riley signed her name without her

permission. But if someone other than Ms. Riley signed her name without her permission, Ms. Riley obviously cannot be held liable for improperly endorsing the Note.

As a threshold matter of law, Plaintiffs' allegation that someone other than Ms. Riley committed forgery by forging Ms. Riley's signature does not state a claim against Ms. Riley. *See Pamel Corp. v. Puerto Rico Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980) ("While [courts] do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); *see also Pesci v. Budz*, 2:12-CV-227-FTM-29, 2012 WL 4856746, at *5 (M.D. Fla. Oct. 12, 2012) (referring to *Pamel* for this same proposition).

**III.    Plaintiffs' Seventh Cause of Action for "Mortgage Fraud in Violation of O.C.G.A. § 16-8-101 *et seq.*" Fails to Connect Ms. Riley to the Mortgage Lending Process and, Therefore, Fails to State a Claim Against Ms. Riley, Even Assuming The Statute Gives Rise to A Private Right of Action.**

Plaintiffs fail to identify against which defendants their Seventh Cause of Action runs. To the extent this indiscriminately pled claim is read to implicate Ms. Riley, Plaintiffs' Seventh Cause of Action fails to state a claim against her.

As an initial matter, O.C.G.A. § 16–8–102, the provision which defines the "mortgage fraud" offense under O.C.G.A. § 16-8-101 *et seq.*, is a penal statute that does not give rise to a private right of action. *See Jenkins v. BAC Home Loan Servicing*, LP, 822 F. Supp. 2d 1369, 1381 (M.D. Ga. 2011) ("Plaintiff attempts to bring a civil cause of action for mortgage fraud, which is governed in Georgia under O.C.G.A. § 16–8–102, a criminal code section. Section 16–8–102 is not a proper vehicle for civil relief, and therefore Plaintiff's claim for mortgage fraud fails to state an appropriate claim.") (emphasis added); *see also Verdi v. Wilkinson Cnty.*, 288 Ga. App. 856, 858, 655 S.E.2d 642, 643 (2007) ("the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is purportedly injured thereby"). Because

Plaintiffs do not have a private right of action for "Mortgage Fraud in Violation of O.C.G.A. § 16-8-101 et seq." Plaintiffs' Seventh Cause of Action fails to state a claim.

Even if there were a cognizable civil claim under the Mortgage Fraud penal statute, such a claim fails against Ms. Riley.

None of the allegations concerning this cause of action is directed against, let alone makes any mention of, Ms. Riley. This is unsurprising given that Ms. Riley had no involvement with the lending process. As set forth above, the only facts alleged in the Complaint regarding Ms. Riley relate to Chase's alleged forging of her name on the post-closing indorsement of Plaintiffs' Note. By Plaintiffs' own admission, Ms. Riley had nothing to do with the "mortgage lending process" as defined in O.C.G.A. § 16-8-101 *et seq.* Plaintiffs do not, because they cannot, allege that Ms. Riley was in any way involved in the "solicitation, application, or origination, negotiation of terms, third-party provider services, underwriting, signing and closing, and funding of the loan." O.C.G.A. § 16-8-101(1).

Moreover, the alleged forged indorsement of the note after the loan closing has no relationship whatsoever to the documents the statute recognizes as involved in the mortgage lending process—*viz.*, a "uniform residential loan application[] or other loan application[]; appraisal report[]; HUD-1 settlement statement[]; supporting personal documentation for loan applications such as W-2 forms, verification[] of income and employment, bank statements, tax returns, and payroll stubs." *Id.*

In sum, the Complaint utterly fails to allege *any* action by Ms. Riley "during the mortgage lending process," let alone a "knowingly . . . deliberate misstatement, misrepresentation, or omission [by Ms. Riley] during the mortgage lending process." O.C.G.A. § 16-8-101(2); *id.* at § 16-8-102. To the extent Plaintiffs even allege a claim

against Ms. Riley for violation of Georgia's Residential Mortgage Fraud Act, such a claim must fail as a threshold legal and factual matter.

**IV.    Plaintiffs' Ninth Cause of Action for "Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.*" Makes No Allegations Regarding Ms. Riley.**

While Plaintiffs allege the Ninth Cause of Action against "All Defendants," none of the allegations concerning this cause of action is directed against, or makes any mention of, Ms. Riley. All the facts that purportedly support this cause of action pertain to alleged foreclosure activity and alleged related attempts to collect on Chase's secured interest in the subject property. *See* Compl. at ¶¶ 146–55. Because, as a threshold matter, Plaintiffs do not allege that Ms. Riley attempted to collect a debt in any way shape or form from Plaintiffs, their FDCPA claim against her is fatally defective.

As discussed above, the only facts in the Complaint regarding Ms. Riley pertain to her *non-activity* (*i.e.*, others' alleged forgery of her name as part of the Note indorsement). The Complaint is devoid of any plausible connection between Ms. Riley and debt collection activities. Simply put, there is no allegation, nor could Plaintiffs ever credibly maintain, that Ms. Riley acted as a "debt collector" within the meaning of the statute. *See* 15 U.S.C. §1692a(6) (defining "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"). Accordingly, Plaintiffs' FDCPA claim against Ms. Riley must fail. *See Douglas v. Yates*, 535 F.3d 1316, 1321–22 (11th Cir. 2008) (dismissing Complaint for failure to state a claim and reasoning, "[a]lthough [Plaintiff's] complaint alleges that a constitutional violation occurred, the complaint fails to allege facts that associate [Defendants] with that violation."); *see also Pamel*, 621 F.2d at 36 ("While [courts] do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a

legal wrong."); Wright & Miller, § 1234 Statement of Particular Matters—Constitutional Rights, 5 Fed. Prac. & Proc. Civ. § 1234 (3d ed.) ("[T]he complaint will be held defective if . . . the complaint fails to connect the defendant with the alleged wrong.").

## CONCLUSION

For the foregoing reasons, as well as the reasons articulated in Chase's contemporaneously filed Motion to Dismiss (D.E. 15), Ms. Riley respectfully requests that the Court grant Ms. Riley's Motion to Dismiss all claims asserted against her with prejudice.

Dated:  May 8, 2013                         Respectfully submitted,

<div style="margin-left:40%">

/s/ *Stephanie L. McAlister*       

**Wargo & French, LLP**
Stephanie L. McAlister
Florida Bar No. 86518
201 S. Biscayne Blvd, Suite 1000
Miami, Florida 33131
Phone (305) 777-6000
Fax (305) 777-6001
Email: smcalister@wargofrench.com

Attorney for Defendant
**CYNTHIA RILEY**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on CM/ECF on this 8th day of May, 2013, on all counsel and parties of record on the Service List below.

/s/ *Stephanie L. McAlister*_____
Stephanie L. McAlister

## SERVICE LIST

**Jacqulyn Mack**
The Mack Law Firm, Chartered
2022 Placida Rd
Englewood, FL 34224-5204
Phone: (941) 475-7966
Fax: (941) 475-0729
Email: jacqulyn@macklawfirm.org

*Counsel for Plaintiffs*

**Thomas H. Loffredo**
tom.loffredo@gray-robinson.com
**Jeffrey Thomas Kuntz**
Florida Bar No. 870323
jkuntz@gray-robinson.com
**Ronald J. Tomassi, Jr.**
Florida Bar No. 29751
ronald.tomassi@gray-robinson.com
**Roland E. Schwartz**
Florida Bar No. 712078
rschwartz@gray-robinson.com
Suite 1850
401 E Las Olas Blvd.
Ft. Lauderdale, Florida 33301
Phone (954) 761-8111
Fax (954) 761-8112

*Counsel for Defendant JPMorgan Chase Bank, N.A.,*

**Gregory M. McCoskey**
Akerman Senterfitt
Suite 1700
401 E Jackson St
Tampa, FL 33602-5250
Phone: (813)223-7333
Fax: (813) 223-2837
Email: greg.mccoskey@akerman.com

*Counsel for Defendants Nationwide Title Clearing, Inc.
and Erika Lance*