UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CINDY J. AMES, et al.,

    Plaintiffs,

v.                                                               CASE NO.: 8:13-cv-806-T-23TGW

J.P. MORGAN CHASE BANK, N.A.,
et al.,

    Defendants.
_____/

**<u>ORDER</u>**

       In March, 2007, Washington Mutual Bank ("WaMu") issued a $4.65 million loan to Cindy and David Ames and secured the loan with the Ameses' home in Alpharetta, Georgia (the "property").[1] The Ameses executed a "security deed"[2] in favor of WaMu securing the $4.65 million note with the property. In 2010, the Ameses defaulted. In August, 2012, the FDIC, as receiver for WaMu, assigned WaMu's interest in the property to J.P. Morgan Chase ("Chase"). Chase recorded the assignment in September, 2012.

       On December 19, 2012, after Chase initiated foreclosure proceedings, the Ameses sued Chase, Cynthia Riley, and Aldridge Connors in Georgia state court,

---

[1] The property is a 31,000 square-foot home located on 1.6 acres. (Doc. 20 at 1-2)

[2] In Georgia, a statutory "security deed," unknown and unavailable in Florida, secures a real estate loan in a manner similar to, but different from, a mortgage, which is an alternative under Georgia law.

*Cindy Ames, et al. v. JP Morgan Chase, et al.*, No. 2012-cv-22511 (December 19, 2012) ("the first Georgia action"). (Doc. 21-1) An employee of Chase, Riley indorsed the Ameses' promissory note in favor of Chase. A law firm, Aldridge Connors ("AC"), represented Chase in the foreclosure. The Ameses moved to temporarily enjoin the sale of the property and asserted eight claims – ranging from a quiet-title claim to an unconstitutional "taking" claim – alleging that Chase is not a secured lien holder with a right to foreclose on the property. (Doc. 21-1) On January 11, 2013, the Ameses withdrew their motion for a temporary restraining order and voluntarily dismissed the first Georgia action.

On March 28, 2013, the Ameses filed (Doc. 1) this action against the same defendants as in the first Georgia action. The Ameses also sue (1) Nationwide Title Clearing ("NTC") and NTC's employee, Erika Lance, who, in behalf of NTC, prepared the security deed assignment from the FDIC to Chase, and (2) Laquina Wilson Doaty, Pearl Burch, Lashonda Anderson, Shequita Knox, and Angela Ruth Payne, each a Chase employee that either executed, witnessed, or notarized the security deed assignment from the FDIC to Chase.

The Ameses assert nine claims against the defendants. Count I seeks a declaration against Chase that the transfer of the security deed and of the note from WaMu to the FDIC is invalid. (Doc. 1 at 26) Count II seeks a declaration against Chase that the transfer of the security deed and of the note from the FDIC to Chase is invalid. (Doc. 1 at 26) Count III seeks a declaration against Chase, NTC, Lance,

- 2 -

Doaty, Burch, Khan, and Anderson that the transfer of the security deed from the FDIC to Chase is fraudulent and void. (Doc. 1 at 27) Count IV seeks a declaration against Chase and Riley that the indorsement on the note held by Chase is a forgery and is void. (Doc. 1 at 28) Count V alleges that Chase and AC attempted a wrongful foreclosure against the Ameses. (Doc. 1 at 29) Count VI alleges that Chase, NTC, Lance, Doaty, Burch, Khan, and Anderson conspired to slander the Ameses' title to the property. (Doc. 1 at 29) Count VII alleges that Chase and AC committed mortgage fraud against the Ameses. (Doc. 1 at 30) Count VIII alleges that Chase breached the terms of the note. (Doc. 1 at 33) Finally, Count IX alleges that each defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. (Doc. 1 at 34)

Two days after filing this action, on April 30, 2013, the Ameses sued Chase and AC in Georgia state court, *Ames, et al. v. JPMorgan Chase Bank, NA, et al.*, No. 2013-cv-230620 (April 30, 2013) (the "second Georgia action"). (Doc. 56-1) Count I (quiet title) alleges that the Ameses' title to the property is "clouded" and seeks a judicial determination that Chase is not a secured creditor under Georgia law.[3] (Doc. 56-2 at 1) Count II (fraud) alleges that Chase and AC "knowingly and intentionally lied[ ] and concealed material information from Plaintiffs which is required by Georgia statutes . . . to assure Plaintiffs of having received proper and

---

[3] The Ameses assert Count I against "all parties claiming an interest in the subject property." (Doc. 56-2 at 1)

timely Notice of Default, Acceleration and Notice of Foreclosure Sale." (Doc. 56-2 at 2) Count III (violation of the "Georgia Residential Mortgage Fraud Act") alleges that Chase and AC violated the state statutes governing mortgages and mortgage foreclosures. (Doc. 56-2 at 4) Count IV (negligence) alleges that Chase and AC breached an obligation to the Ameses to ensure that the Ameses obtained "legal title that was clear and enforceable." (Doc. 56-2 at 7) Count V (violation of Georgia's Uniform Deceptive Trade Practices Act) alleges that Chase and AC "should have known of . . . pre-existing title defects that rendered any non-judicial foreclosure action improper." (Doc. 56-2 at 9) Count VI (wrongful foreclosure) alleges that Chase and AC wrongfully attempted to foreclose on the property. Count VII ("breach of duty to fairly exercise the power of sale") alleges that Chase received no valid assignment and that Chase had no right to foreclose on the property. (Doc. 56-2 at 10) Finally, count VIII (unconstitutional taking) alleges that "the non-judicial foreclosure of the Plaintiffs' property constitutes a taking by a Federal Agency under color of law without due process and for the private, not public, use and benefit of Defendant [Chase]." (Doc. 56-2 at 13, 15)

A November 18, 2013, order dismisses with prejudice each of the Ameses' eight counts of the amended complaint in the second Georgia action. (Doc. 52-1) The November 18 order characterizes Count I (the quiet-title claim) as the Ameses' "challeng[ing] their own title to the Property in an attempt to deny the lender [Chase] the right to foreclose." (Doc. 52-1 at 5) The order decides that Chase, and not the

Ameses, may pursue a claim to quiet title "to the extent the claim has any validity." (Doc. 52-1 at 5) The November 18 order determines that the Ameses' remaining claims lack merit:

> For the following reasons, the Court finds Plaintiffs' remaining claims (Counts 2 - 8) are meritless. On March 29, 2013, seven months before Plaintiffs filed the [amended complaint], the [Georgia] Court of Appeals ruled [that] a borrower has no standing to challenge the validity of the Assignment because the borrower is not a party to the contract. <u>Montgomery v. Bank of America</u>, 321 Ga. App. 343, 346 (2013). On May 20, 2013, five months before Plaintiffs filed the [amended complaint], the Supreme Court [of Georgia] resolved the issue of Note Splitting by stating clearly and unequivocally [that] "the current law does not require a party seeking to exercise a power of sale in a deed to secure debt to hold, in addition to the deed, the promissory note evidencing the underlying debt." <u>You v. JP Morgan Chase Bank, N.A.</u>, 293 Ga. 67 (2013). These two decisions render irrelevant the majority of the [amended complaint's] allegations."

(Doc. 52-1 at 6) Concluding (1) that Counts II through VIII were "predicated on Plaintiffs' erroneous notion that Chase had no authority to foreclose" and (2) that Chase and AC had complied with the mortgage foreclosure requirements of Georgia law, the November 18 order holds that the Ameses' amended complaint fails to state a claim. (Doc. 52-1 at 7) The Ameses apparently appealed the November 18 order. (Doc. 60) (Plaintiffs' notice of filing a motion for extension of time to file a notice of appeal in the second Georgia action.)

A December 4, 2013, order (Doc. 54) requires the Ameses to address the preclusive effect, if any, of the November 18 order on this action:

> The defendants submit (Docs. 52 and 53) a copy of a November 18, 2013, order in an action in Georgia state court,

- 5 -

> *Ames, et al. v. JPMorgan Chase Bank, NA, et al.*, No. 2013-cv-230620 (November 18, 2013) (the "Georgia action"), by the plaintiffs against JPMorgan Chase Bank, NA, and Aldridge Connors, LLP. The plaintiffs assert claims in the Georgia action that appear identical to the claims that the plaintiffs assert in this action. The November 18 order in the Georgia action finds that the plaintiffs fail to state a claim and dismisses with prejudice the plaintiffs' eight-count amended complaint against Chase and Aldridge Connors, each a defendant in this action.
>
> No later than **December 11, 2013**, the plaintiffs must submit a memorandum of ten or fewer pages that addresses whether the November 18 order bars by *res judicata*, issue preclusion, or otherwise each claim against each defendant in this action. In the memorandum the plaintiffs will describe the procedural posture and status of the Georgia action (and any other related state court action) and will attach a copy of the October 9, 2013, amended complaint in the Georgia action. No later than **December 18, 2013**, each defendant may submit a responsive memorandum of ten or fewer pages. The plaintiffs' failure to comply with this order will result without further notice in the dismissal of this action for failure to prosecute.

(Doc. 54)  The Ameses submit a brief that partially[4] responds to the December 4 order.  (Doc. 55)  Chase, AC, and Riley each submit a reply brief.  (Docs. 57, 58 and 59)

The Ameses correctly note that Georgia codified the common law principle of *res judicata* as follows:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

---

[4] The Ameses' response (Doc. 55) inexplicably addresses only the *res judicata*, and not the issue-preclusion or *collateral estoppel*, effect of the November 18 order on this action.

O.C.G.A. § 9-12-40.[5]  (Doc. 55 at 4)  As noted in the defendants' papers (Docs. 57 and 58), the November 18 order in the second Georgia action bars, under *res judicata*, the Ameses' claims against Chase and AC in this action.  The second Georgia action and this action involve the same parties and substantially the same claims.  To the extent that the Ameses assert additional claims in this action – such as the Ameses' claim under the FDCPA (Count IX) – the additional claims are barred because the Ameses "might have" asserted the claims in the second Georgia action.  O.C.G.A. § 9-12-40 (barring claims that were asserted "or under the rules of law *might have been*" asserted in the earlier action) (emphasis added); *Perret v. Summer*, 649 S.E.2d 536, 547 (2007).  The November 18 order dismisses the action with prejudice, is final, and operates as a judgment on the merits.  Davis & Shulman, *Georgia Practice & Procedure*, § 23:2 (2013); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990).

The November 18 order bars the claims against Chase and AC here.  Counts I, II, V, VII, and VIII of the complaint (each of which alleges a claim against only Chase or AC or both) are **DISMISSED WITH PREJUDICE**.  Counts III, IV, VI, and IX of the complaint are **DISMISSED WITH PREJUDICE** as to Chase and AC.

---

[5] "[T]he state whose decision is set up as a bar to further litigation" determines the preclusive effect, if any, of the decision. *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985); *Kizzire v. Baptist Health Sys.*, 441 F.3d 1306, 1308 (11th Cir. 2006).

To invoke subject matter jurisdiction, the Ameses rely on the complaint's presenting a federal question (28 U.S.C. § 1331) and a diversity of citizenship between the plaintiffs and the defendants (28 U.S.C. § 1332(a)(1)).[6] The plaintiffs invoke supplemental jurisdiction over any related state-law claims (28 U.S.C. § 1367(a)). (Doc. 1 at 4 ¶ 17) Requiring interpretation of Georgia law, the majority of the Ameses' claims seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*. The Declaratory Judgment Act, however, provides no independent basis for federal jurisdiction and, without more, presents no federal question.

> The Declaratory Judgment Act does not expand federal jurisdiction by creating an independent basis for jurisdiction. Because a federal court may only render declaratory relief in a case within its jurisdiction, an action for declaratory relief requires that the party seeking relief must independently satisfy federal subject matter jurisdiction requirements. Thus, actions for declaratory judgments may be based on ancillary jurisdiction or special jurisdiction statutes; however, more commonly, federal subject matter jurisdiction is based on the existence of a federal question . . . or the complete diversity of citizenship of adverse parties . . . ."

*Moore's Federal Practice*, Vol. 12, § 57.21[1] (3d ed. 2013); Wright, Miller & Kane, *Federal Practice and Procedure*, Vol. 14 10B, § 2766 (3d ed. 2013).

Silent on the amount in controversy, the complaint affirmatively defeats diversity of citizenship. The Ameses allege that they are residents of Georgia and

---

[6] In one of many typographical errors in the complaint, the Ameses cite "28 U.S.C. § 1332(a)(2)," which grants federal jurisdiction over disputes between "citizens of a State and citizens or subjects of a foreign state." (Doc. 1 at 4 ¶ 17)

that the defendant Aldridge Connors is a resident of Georgia. (Doc. 1 at 4 ¶ 19 and at 6 ¶ 29). "Because [c]omplete diversity exists if no plaintiff is a citizen of the same state as any defendant," the Ameses fail to invoke diversity jurisdiction. *Moore's Federal Practice*, Vol. 12, § 57.21[3][a] (3d ed. 2013); *Carden v. Arkoma Associates*, 494 U.S. 185, 197-98 (1990).[7]

The Ameses assert only one claim that presents a federal question. Count IX purports to assert a claim against each defendant under the Fair Debt and Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). (Doc. 1 at 34-36) The Ameses predicate Count IX on the central premise – rejected resoundingly in the second Georgia action – that Chase is not a secured creditor and, therefore, that Chase has no legal right to foreclose on the property. Specifically, the Ameses claim:

> Defendants' collection activities described herein violate [the FDCPA] in that defendants' were claiming, attempting and threatening to collect and foreclose this consumer mortgage debt by foreclosure action they kn[ew] or should have known that the right to pursue non-judicial foreclosure does not exist under the law because:
>
> a. Chase is not the secured creditor as to the Ames loan;
>
> b. Chase has failed to comply with the statutory and contractual conditions precedent to non-judicial foreclosure;
>
> c. Defendants' unconscionable, deceptive methods and practices in collecting this loan should preclude them from seeking enforcement of the alleged defaulted debt.

---

[7] Complete diversity of citizenship must exist when the complaint is filed. *Moore's Federal Practice*, Vol. 12, § 57.21[3][a] (3d ed. 2013).

(Doc. 1 at 34-5 ¶ 151)  The Ameses challenge Chase's security interest in the property and Chase's ability to enforce that interest through foreclosure:

> It is Plaintiffs' good faith belief that the Assignment of Security Deed, created by Defendants, Chase, NTC, Lance, Doaty, Burch, Knox and Anderson, was created through collusion between these defendants and/or Aldridge to support the claimed right to enforce the alleged defaulted debt when there is no present right to possession of the property claimed as collateral through an enforceable security interest.

(Doc. 1 at 34 ¶ 150)

The November 18 order in the second Georgia action, however, holds that the Ameses lack standing to challenge the assignment, that Chase is a secured lienholder, and that Chase has the right to foreclose its mortgage lien on the property.  Having litigated these issues fairly and with the benefit of counsel in at least two Georgia courts, the Ameses are collaterally estopped from now seeking a different result in a different forum.  *See Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (collateral estoppel is properly invoked when "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding."); *In re Graham*, 191 B.R. 489, 494-95 (N.D. Ga. 1996) (citing Georgia cases).

Also, the Ameses' FDCPA claim is at least facially insufficient and perhaps frivolous. The Ameses fail to allege that each defendant is a "debt collector" under Section 1692a(6) of the FDCPA. Section 1692a(6) defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The complaint fails to allege (and cannot allege) that the defendants are primarily in the business of collecting the debts of others or that the defendants regularly collect or attempt to collect the debts of others. According to the complaint, NTC, the title company, and Lance, NTC's employee, prepared the assignment. (Doc. 1 at ¶¶ 85, 96) Doaty and Burch, each an employee of Chase, executed the assignment. (Doc. 1 at ¶ 96) Anderson and Knox, each an employee of Chase, witnessed Doaty's and Burch's executing the assignment. An employee of Chase, Payne notarized the assignment.[8] (Doc. 1 at ¶ 100) The alleged conduct fails to render the defendants "debt collector[s]" for purposes of the FDCPA. The Ameses fail to allege that each defendant communicated directly with the Ameses, that each defendant communicated with the Ameses to collect a debt, or

---

[8] The Ameses allege that the note is indorsed by the forged, stamped signature of Riley, a Chase employee. The complaint alleges that Riley took no action in relation to the note; the complaint states that "the indorsement [of the note] was not signed by Riley" and that "Riley . . . did not indorse the Note." (Doc. 1 at 12 ¶¶ 59-61) As she notes, "Ms. Riley obviously cannot 'forge' her own signature. If Ms. Riley's signature is, as Plaintiffs suggest, a 'forgery,' then by definition someone other than Ms. Riley signed her name without her permission." (Doc. 20 at 15-16) At best, Riley is a witness, not a defendant.

that each defendant participated in the foreclosure proceedings against the Ameses. The Ameses also fail to state an FDCPA claim against Riley, Lance, Doaty, Burch, Knox, and Anderson, each of whom is, at best, an employee of a purported "debt collector." Section 1692a(6)(A) specifically excludes from the definition of a "debt collector" "any officer or employee of a creditor" who collects a debt in the name of the creditor. Accordingly, Count IX of the complaint is **DISMISSED WITH PREJUDICE** as to NTC, Lance, Riley, Doaty, Burch, Khan, and Anderson.[9]

Absent diversity or federal-question jurisdiction, supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) is **DECLINED** over the state-law claims asserted in the remaining counts (Counts III, IV, and VI).[10]

The clerk will (1) enter judgment accordingly, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on February 14, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[9] The defendants' motions to dismiss Count IX (Docs. 11, 20, and 33) are **GRANTED**.

[10] Count VII (mortgage fraud) appears directed only against Chase and AC. If Count VII, construed differently, asserts a claim against a remaining defendant, supplemental jurisdiction is also **DECLINED**.

- 12 -